James Wallace **VICKNAIR**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 036–84.

Court of Criminal Appeals of Texas, En Banc.

Sept. 17, 1986.

On Motion For Rehearing April 13, 1988.

Don Ervin, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and Winston E. Cochran, Jr., Patricia Saum and J. Sidney Crowley, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

TOM G. DAVIS, Judge.

Appellant pled guilty before the court, pursuant to a plea bargain, to possession of more than five and less than fifty pounds of marihuana. The court assessed five years. The First Court of Appeals (Houston) reversed the conviction, holding that the search of appellant's automobile resulted from an illegal stop. *Vicknair v. State,* 670 S.W.2d 286 (Tex.App.—Houston [1st Dist.] 1983). We granted the State's petition for discretionary review to examine this holding.

A hearing was held on appellant's motion to suppress. Houston Police Officer D.W. Illingworth testified that on the evening of November 27, 1981, he was on patrol with his partner. Illingworth testified concerning the stop of appellant's vehicle as follows:

"Q. What was it about this vehicle that first directed you to it?

"A. We observed an equipment violation on that vehicle.

"Q. Was this vehicle being driven on a public roadway?

"A. Yes.

" ...

"Q. What was the nature of the equipment violation that you observed?

"A. It was a defective taillight with a cracked lens and white light showing to the rear of the vehicle while moving."

Illingworth and his partner then stopped the vehicle. Appellant was the driver. Illingworth asked to see appellant's driver's license. Appellant stated "that his license had been revoked in another state." Illingworth asked again if appellant had a Texas driver's license. When appellant replied that he had not, and was unable to produce a driver's license, Illingworth placed him under arrest. Subsequent events led to the discovery of a quantity of marihuana in plain view in appellant's car.

On cross-examination, Illingworth testified further concerning his reason for stopping appellant, as follows:

"Q. And what was that violation?

"A. Cracked taillight lens.

"Q. And that is a violation of what law?

"A. I believe Vernon's Civil Statutes of Texas Moving Motor Vehicle Laws.

"Q. Can you tell me what law that is?

"A. The only thing I could say, sir, was to give you the title used for the charge itself on the citation.

"Q. What is that?

"A. The title would be defective rear lights, cracked taillight lens.

"Q. That's not having a taillight that illuminates a red reflection?

"A. Excuse me, sir?

"Q. Is that what you're talking about, not having a taillight that emits something red?

"A. What I'm referring to, sir, is a taillight lens that has been cracked to the extent you could observe white light coming through the rear.

"Q. That is a violation of the law?

"A. Yes. I was instructed by the department and in my training to issue a citation for that particular violation.

"Q. And that's a cracked taillight lens or having a defective taillight?

"A. Defective taillight, cracked taillight lens.

"Q. Was the red light illuminating from the taillight?

"A. I would say yes. There was a red light, but it was a portion of it that had white light as well."

The Court of Appeals wrote: "Both appellant and the State agree that the violation the officer was describing was that in

Tex.Rev.Civ.Stat.Ann. art. 6701d, Sec. 111 (Vernon 1977) ..."

The Court of Appeals held that a cracked taillight emitting white light is not a violation of Art. 6701d, Sec. 111,[1] supra, because the statute requires only that a plainly visible *red* light be emitted and does not prohibit the emission of light of another color. Since the evidence established that appellant's taillight did emit a visible red light at all times, the Court of Appeals ruled the initial stop of appellant invalid and that the fruits thereof should have been suppressed.

We need not reach the issue of whether the Court of Appeals' interpretation of Art. 6701d, Sec. 111, supra, is correct. We will focus on a separate part of Art. 6701d entitled ARTICLE XV—INSPECTION OF VEHICLES.

Section 140(a) provides, in pertinent part:

"Every motor vehicle ... registered in this state and operated on the highways of this state, shall have the ... lighting equipment ... inspected at state-appointed inspection stations or by State Inspectors as hereinafter provided.

" ...

"(b) If such inspection discloses *the necessity for adjustments,*[2] corrections, *or repairs,* the vehicle shall be adjusted,

corrected, or repaired before a certificate is issued as hereinafter provided...."

Section 141 provides, in pertinent part: "(a) ... The Department [of Public Safety] is authorized to furnish instructions to, and to supervise official inspection stations and mechanics for inspection of motor vehicles ... for the *proper and safe performance* of the required items of inspection....

" ...

"(d) No certificate of inspection shall be issued by any inspector or inspection station until the vehicle has been inspected and found to be in proper and safe condition and to comply with the uniform standards of safety, inspection rules and regulations, and laws of this State."

Section 142(a) provides, in pertinent part:

"The Public Safety Commission shall establish uniform standards of safety whenever applicable with respect to items to be inspected as provided by Section 140 of this Act and shall list those items to be inspected in conformity with these standards established as provided by law. The list of items to be inspected and uniform standards of safety shall be posted in every official inspection station. *Every vehicle inspected shall conform in all respects to the uniform standards of safety and the list of items to*

1. Sections 109 and 111 form a part of Art. 6701d, supra, entitled ARTICLE XIV—EQUIPMENT, and provide as follows:
   "Sec. 109.
   "(a) Every vehicle upon a highway within this State at any time from a half hour after sunset to a half hour before sunrise and at any other time when, due to insufficient light or unfavorable atmospheric conditions, persons and vehicles on the highway are not clearly discernible at a distance of one thousand (1,000) feet ahead shall display lighted lamps and illuminating devices as hereinafter respectively required for different classes of vehicles, subject to exceptions with respect to parked vehicles, and further that stop lights, turn signals and other signalling devices shall be lighted as prescribed for the use of such devices.
   "(b) Whenever requirement is hereinafter declared as to distance from which certain lamps and devices shall render objects visible or within which such lamps or devices shall be visible, said provisions shall apply during

the times stated in Subsection (a) of this section in respect to a vehicle without load when upon a straight, level, unlighted highway under normal atmospheric conditions unless a different time or condition is expressly stated.
   " ...
   "Sec. 111.
   "(a) After January 1, 1972, every motor vehicle, trailer, semitrailer and pole trailer, and any other vehicle which is being drawn at the end of a combination of vehicles, shall be equipped with at least two (2) tail lamps mounted on the rear which when lighted as required in Section 109, shall emit a red light plainly visible from a distance of one thousand (1,000) feet to the rear, except that passenger cars and trucks manufactured or assembled prior to model year 1960 shall have at least one (1) tail lamp ..."

2. All emphasis added by the author of this opinion.

*be inspected established pursuant to this Section."*

The Administrative Code contains the "list of items to be inspected" in the form of a chart. We set out the text appearing adjacent to the chart in the Administrative Code:

"Sec. 23.41  Inspection Items.

"(a) Section 1. The attached chart, as amended in January, 1982, lists the vehicle equipment required to be inspected according to the classification of the vehicle.

"(b) Section 2. The procedures and requirements for performing the inspection are contained in the Rules and Regulations Manual for Official Vehicle Inspection Stations and Certified Inspectors.

"(c) Section 3. The chart is contained in the Rules and Regulations Manual which is on file in the county clerk's office in every county in the state and in every vehicle inspection station."

Tex. Public Safety Comm'n, 37 Tex.Admin. Code Sec. 23.41 (November 1977) (Inspection Items, Procedures, and Requirements).

We now set out the pertinent provisions of the Rules and Regulations for Official Vehicle Inspection Stations and Certified Inspectors:

"The rules and regulations contained in the following pages of this manual are promulgated under the authority of Article XV, Revised Civil Statutes of Texas, 6701d, the Uniform Act Regulating Traffic on Highways.

" . . .

"SPECIAL REQUIREMENTS AS TO LIGHTING DEVICES AND REFLECTORS FOR PASSENGER CARS . . .

" . . .

"Any lighting device, lens, and/or reflector used on a vehicle must meet standards adopted by the Texas Department of Public Safety for that particular use.

" . . .

"TAIL LAMP

[Art. 6701d, Sec. 111 is set out]

" . . .

"INSPECTION PROCEDURE: A *crack* is defined as 'any break that allows mois-ture to penetrate the interior of the lamp unit or *allows a white light to be emitted to the rear of any vehicle.'*

" . . .

"INSPECT FOR AND REJECT IF:

" . . .

"3. Lamp does not *completely emit a red light* plainly visible 1,000 feet to the rear.

"4. Lamp lens is *cracked,* broken, painted, missing, discolored, or does not fit properly."

Section 141(d) of Art. 6701d, supra, provides in pertinent part:

"No person shall drive or move on any highway any motor vehicle . . . unless the equipment upon any and every said vehicle is in *good working order and adjustment as required in this Act* and said vehicle is in such safe mechanical condition as not to endanger the driver or other occupant or any person or property."

Section 140(g) provides in pertinent part:

"Any person operating a vehicle on the highways of this State . . . *in violation of the provisions of this Act* or without displaying a valid inspection certificate or having equipment which does not comply with the provisions of Article XIV of this Act is guilty of a misdemeanor and on conviction shall be punished as provided in Section 143 of this Act."

We summarize the requirements of the statute. The lighting equipment of every motor vehicle must be inspected. (Sec. 140(a)). If the inspection discloses the necessity for adjustments or repairs, the equipment must be adjusted or repaired before a certificate of inspection may issue. (Sec. 140(b)). By what criteria is an inspector guided in his determination of the necessity for adjustments or repairs? The Department is authorized to furnish instructions to the inspector for the inspection of motor vehicles "for the proper and safe performance of the required items of inspection." (Sec. 141(a)). The inspector must "inspect for and reject if" the tail lamp does not completely emit a red light or if the lens is cracked. (Rules and Regulations for Official Vehicle Inspection Sta-

tions and Certified Inspectors). The Act commands that no person shall drive a motor vehicle on any highway unless its equipment is "in good working order and adjustment as required" in the Act. (Sec. 141(d)). Is a cracked taillight lens emitting white light "in good working order and adjustment" as required in the Act? Not by the criteria promulgated by the Department pursuant to authority conferred in Article XV of the Act. According to those criteria, a cracked taillight lens emitting white light "discloses the necessity for adjustment [ ] ... or repair [ ]." (Rules and Regulations, etc.; Sec. 140(b)).

The only remaining issue is whether the criteria of good working order and adjustment established by the Department under authority of Article XV of the Act constitute the criteria of what good working order and adjustment are *as required* in th[e] Act" (Sec. 141(d)). Put another way, can equipment unable to pass inspection nevertheless be in "good working order and adjustment" as required in the Act? In Article XV of Art. 6701d, supra, the legislature has authorized the Public Safety Commission and the Department of Public Safety to promulgate standards of safety and performance for all equipment subject to inspection on motor vehicles. We hold that the criteria promulgated by the Department under authority of the Act constitute the criteria of good working order and adjustment as required in the Act.

A person who drives on any highway a motor vehicle with equipment that is not in "good working order and adjustment" as required in the Act violates a prohibition of the Act. Sec. 141(d). Any person operating a vehicle on the highways of this State in violation of the provisions of the Act is guilty of a misdemeanor. Sec. 140(g). Section 153 of Art. 6701d provides: "Any peace officer is authorized to arrest without warrant any person found committing a violation of any provision of this Act."

Officer Illingworth had probable cause to stop appellant's vehicle and statutory authority to stop it without a warrant.

The judgment of the Court of Appeals is reversed and the cause is remanded to that court for consideration of appellant's other grounds of error.

CLINTON, Judge, dissenting.

Once again a majority acts like this cause is before the Court on direct appeal. Although it recognizes the reason for decision given by the Houston (1st) Court of Appeals, see Article 44.24(b), V.A.C.C.P., the majority declines to review that, and thus the decision of the court of appeals. Article 44.45(b), *id.* "We need not reach the issue of whether the Court of Appeals' interpretation ... is correct." Slip Opinion, p. 4. Once again I dissent.*

And while the Court here deals with "a cracked lens" over a taillight, the approach taken by the majority to justify an arrest is so similar to its treatment of a "left wheel to curb" infraction in *Williams v. State,* 726 S.W. 99 (Tex.Cr.App.1986), that the reasons I gave for dissenting there are equally applicable to this appalling insistence on doing a policeman's job and then upholding what it has done in his stead.

To resort to a "chart" in an administrative code and a "rules and regulations manual" said to be on file in courthouses and in vehicle inspection stations to find probable cause and authority to stop an automobile the citizen is lawfully operating otherwise is an incredible demonstration of judicial imposition of that kind of "order" intended in the familiar but often misunderstood phrase "law and order."

I dissent.

TEAGUE, Judge, dissenting.

In *Meeks v. State,* 692 S.W.2d 504 (Tex. Cr.App.1985), this Court cautioned police officers of this State that the viability of Art. 6687b, Sec. 13, V.A.C.S., which provides, inter alia, that "Any peace officer

---

* For reasons I will develop on rehearing, the majority errs in its selection of statutes to interpret and in its interpretation of them.

may stop and detain any motor vehicle operator for the purpose of determining whether such person had a driver's license as required by this Section," is in question in light of what the Supreme Court stated and held in *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979).[1]

And yet today, and notwithstanding what the Supreme Court stated and held in *Delaware v. Prouse*, supra, a majority of this Court has the audacity to hold that a police officer may now lawfully stop and detain a motorist who is driving a motor vehicle that has one or more items of equipment that are not "in good working order and need adjustment." The majority holds that such gives the officer probable cause to stop and detain the motorist. The fact that the item or items of equipment may not be in violation of the law is irrelevant and immaterial. I dissent to such holdings.

I also dissent to the majority doing other than what it was supposed to do after it granted the State's Petition for Discretionary Review.

This Court granted the State's petition for discretionary review in order to review the decision of the Houston [First] Court of Appeals that was handed down in this cause. See *Vicknair v. State*, 670 S.W.2d 286 (Tex.App.—Houston [1st] 1983).

Today, however, a majority of this Court does not see fit to review the decision of the court of appeals, but, instead, rewrites the majority opinion of the court of appeals that was written by Justice Cohen. I dissent to such action.

I also dissent to the majority opinion reversing the decision of the court of appeals. I believe that the court of appeals correctly held that the trial court erred in overruling the appellant's motion to suppress the evidence because the arrest that occurred in this cause was made without warrant and was not supported by probable cause.

Without citation of any case law authority, the majority opinion holds that the arresting officer had probable cause to stop the motor vehicle that appellant was driving because it has now discovered after the fact of the arrest that one of the taillight lenses on the vehicle that appellant was driving prior to when he was arrested was not "in good working order and needed adjustment."

I agree that a police officer who *sees* a motorist violate a traffic law is authorized to stop that vehicle. However, I am unable to agree that a police officer may stop a motorist when he does not *see* such a violation occurring.

Thus, in this instance, we must ask the following question: What traffic law did the arresting officer *see* appellant violating when he stopped him?

The record is clear that the police officer stopped the appellant because he had been erroneously informed by his instructors at the police academy, as well as by his supervisors in the police department, that if a taillight lens on a motor vehicle was "cracked to the extent you could observe white light coming through the rear" such constituted a traffic violation. However, Art. 6701d, Section 111, V.A.C.S., which might govern, does not provide that having such a taillight lens is a violation of the law, but, instead, provides that it is a violation of the law if the lens does not emit a red light plainly visible from a distance of 1000 feet to the rear. Thus, having a taillight lens that emits both a red light and a white light, or a combination of lights, is not violative of Section 111, provided that the lens emits a red light plainly visible from a distance of 1000 feet to the rear. Of course, the Legislature could change this law to prohibit a taillight lens from emitting more than a red light, but it has not chosen to do so.

---

1. The Supreme Court held in *Delaware v. Prouse*, supra, that illegal random police stops of vehicles driven on the public streets or highways for license and registration checks were unlawful. It also held that officers must have at least a reasonable suspicion that some law is being violated before they can make stops for license or registration checks. This is because random license and registration checks are just as intrusive as a roving border patrol stop. See and compare *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *United States v. Martinez-Fuerte*, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976).

In his testimony, the arresting officer admitted that he stopped appellant only because he believed that the taillight lens on the vehicle that appellant was driving was in violation of the law. There is absolutely no evidence before this Court that when the arresting officer stopped appellant's vehicle that he was concerned about whether or not the taillight lens was "in good working order and needed adjustment." He thought he saw a violation of the law, but in fact did not see any violation of the law.

The State, in its petition for discretionary review, argues that the question is not whether the State could have successfully prosecuted the appellant for not having a valid taillight lens, but, instead, is whether the officer had probable cause to stop appellant because he, the officer, had probable cause to believe that appellant's taillight lens was in violation of the law. I agree with the State that the issue is whether the officer had probable cause to stop appellant. However, in this instance, but because of the facts that were adduced in the trial court, I find that the reasons the State gives to support its conclusion that the arresting officer had probable cause to stop appellant's vehicle borders on asking this Court to approve police departments of this State erroneously instructing its officers on the law and then later asking this Court to uphold arrests of our citizens by those same police officers because they were acting in good faith. I, for one, am not ready to adopt or approve such an "Orwellian" argument.

The majority reasons that a person may violate our traffic laws by driving a motor vehicle with equipment that does not violate the law, but because such equipment is not "in good working order and needs adjustment," that is probable cause a violation of the law has occurred.

By the majority's decision, it will now be necessary for every motorist of this State, in order to escape having his vehicle labeled "probable cause," to daily take his vehicle to a State approved inspection station and have his vehicle inspected. Ask yourself: Notwithstanding the fact that my motor vehicle has a valid certificate of inspection, are all of the following items on my automobile in good working order *and* do not require *any* kind of adjustment: "Horn, windshield wipers, inside mirror, steering wheel, seat belts, brakes (service and parking), tires, wheels and rims, exhaust system, exhaust emission system, beam indicator, both tail lamps, both stop lamps, license plate lamp, both rear red reflectors, turn signal lamps, and both head lamps"? If you do not know, or are not sure, whether all of these items on your automobile are in good working order, and also do not need any kind of adjustment, and even though you cannot visibly see that any of the items might need any repair or adjustment, you should, nevertheless, but immediately, take your vehicle to a State approved inspection station and get it inspected; otherwise, your vehicle might constitute probable cause for some police officer to stop you. Of course, enroute to the inspection station, by driving your vehicle, you run the risk that it will be labeled by some police officer "probable cause." I also add: Be sure to have your automobile reinspected tomorrow. Do this on a daily basis. Better yet, purchase a State approved inspection station, incorporate, and sell stock in the corporation, because after today's decision by this Court that stock's value should soar to the heavens due to the great increase in the number of inspections that will or should occur. After today's majority opinion becomes the law, if everyone does what the majority opinion implicitly mandates, some persons might still be able to say, as some persons have been prone to say in the past, that American made automobiles are not the best made automobiles in the world. However, after today, if everyone does what the majority opinion implicitly mandates, I do not believe those same persons will be able to say that American made automobiles are not the most inspected automobiles in the world.

For all of the above and foregoing reasons, I respectfully register my dissent through this dissenting opinion.

## OPINION ON APPELLANT'S MOTION
## FOR REHEARING

TEAGUE, Judge.

The facts of this cause reflect that James Wallace Vicknair, hereinafter appellant, was stopped by a patrolling Houston police officer for driving an automobile with a "fractured" tail light lens, which the officer characterized as "an equipment violation." There is no evidence in the record that appellant's vehicle did not have a valid and clearly visible inspection sticker on it at the time when the officer caused the vehicle to come to a stop. The State has never asserted that there is evidence to the contrary. The only reason the police officer gave for causing appellant's vehicle to come to a stop was the "fractured" tail light lens. Therefore, for purposes of this opinion, we will assume that appellant's vehicle had a valid and clearly visible inspection sticker on it when the officer caused it to come to a stop. The fracture in the tail light lens permitted some white light to be emitted with red light. After being stopped, the officer requested appellant to exhibit and display his driver's license, but appellant could not produce a valid driver's license because his driver's license had been previously revoked. After passengers in appellant's vehicle were ordered to and did exit from the vehicle, the officer saw in plain view a pistol and marihuana. A subsequent search of the vehicle revealed at least five pounds of marihuana, for which appellant was charged and later convicted pursuant to his plea of guilty to the court, which plea had been obtained pursuant to a plea bargain agreement, which provided that appellant would be permitted to appeal the trial court's overruling his motion to suppress. See Art. 44.02, V.A.C.C.P. Punishment was assessed by the trial judge at five years' confinement in the Department of Corrections.

On direct appeal, the First (Houston) Court of Appeals reversed, see *Vicknair v. State*, 670 S.W.2d 286 (Tex.App.—1st 1983), holding that because the fractured tail light lens on appellant's automobile did not violate Art. 6701d, § 111, V.A.C.S., initially there was no lawful stop of appellant's vehicle, thus causing the ensuing seizures to be unlawful under Art. 38.23, V.A.C.C.P. Also see *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), which decision is usually given credit for establishing in our law the "fruit of the poisonous tree" doctrine. However, that phrase was actually coined by Justice Frankfurter in *Nardone v. United States*, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939).

§ 111 provides in pertinent part the following:

... every motor vehicle ... shall be equipped with at least two tail lamps mounted on the rear which, when lighted as required by Sec. 109 [of Art. 6701d, supra,] shall emit a red light plainly visible from a distance of 100 feet to the rear, ...

The court of appeals based its holding that there was an unlawful stop of the appellant's vehicle upon the arresting officer's testimony that the red light emanating from the fractured tail light lens on appellant's vehicle was visible to him at all times. In its opinion, the court pointed out the following: "There is no evidence whatsoever in this record that appellant's car failed to emit a red light plainly visible at a distance of 1000 feet to the rear, as required by § 111. On the contrary, the arresting officer testified that it did emit a red light visible to him at all times at an unstated distance to the rear. Since no one testified that appellant's car failed to emit a visible red light, there was no basis at all to justify the original detention. This distinguishes this case from *Praska v. State*, 557 S.W.2d 83, 86–87 (Tex.Cr.App.1977)." (287).

The officer further testified that he had been instructed at the Houston Police Academy, as well as by his supervisors in the police department, that if a tail light lens on a motor vehicle was "cracked to the extent that you could observe white light coming through the rear" this constituted a violation of the traffic laws of this State. The court of appeals rejected the officer's "good faith" belief concerning the law governing stopping a motorist driving a motor vehicle having a "fractured" tail light lens:

"This was a warrantless arrest. A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view. Tex.Code Pro. Ann. art. 6701d, § 153 (Vernon 1977). However, what this officer testified he observed did not constitute an offense under § 111 of art. 6701d, and the officer's well-intentioned but mistaken belief that it did will not legitimate this search. *Scott v. U.S.*, 436 U.S. 128, 138, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978). 'Instead of motive or intent, the court must view the circumstances objectively to determine whether they support the justification.' *Nickerson v. State*, 645 S.W.2d 888, 890 (Tex.App.—Dallas 1983). If the circumstances do not support the justification claimed for an arrest or search, the evidence illegally seized must be suppressed. Tex.Code Crim.Pro. Ann. art. 38.23 (Vernon 1979)." (287).

We now find that we are in agreement with what the court of appeals stated and held.

On original submission, a majority of this Court did not address the court of appeals' interpretation of § 111, supra, but found that the fractured tail light lens did not pass the criteria established for annual inspection, thus finding that a violation of Art. 6701d, supra, had occurred. This enabled it to hold that the initial stop of appellant's vehicle and the ensuing search and seizures were lawful.

We find that a brief analysis of the applicable provisions of Art. 6701d, supra, assists us in determining whether a motor vehicle can be stopped for a minutia defect or flaw in its equipment, and the evidence does not show that the vehicle did not have a valid and clearly visible inspection sticker on it.

§ 111, supra, is found among the sections dealing with equipment which are accumulated under the subheading entitled "Art. XIV—EQUIPMENT." § 108 of Art. 6701d, supra, which sets forth the scope and effect of regulations under this Article, states that it is a misdemeanor offense to drive a motor vehicle which is in an unsafe condition, or which does not contain the necessary equipment, or which has equipment that is not in proper condition and

adjustment as required in Art. XIV, consisting of sections 108–139 of Art. 6701d, supra, i.e. equipment which has degenerated to the point of being unsafe equipment or, to put it another way, equipment that has become hazardous. The sections in Art. XIV specify the requirement of head lamps, tail lamps, reflectors, brakes, horns, mirrors, stop lamps, safety glazing material, and other items either required or found on motor vehicles.

§ 108(d) authorizes The Department of Public Safety to issue and enforce regulations establishing standards and specifications for equipment relating to approval, installation and adjustment. Art. XV, entitled "INSPECTION OF VEHICLES", exemplifies that grant of authority to regulate and enforce the safety standards of equipment.

Art. XV, consisting of sections 140–142 of Art. 6701d, supra, mandates inspections of motor vehicles at official inspection stations, the necessity of obtaining an inspection sticker, and other particularities dealing with an annual inspection of a motor vehicle. The criteria which a motor vehicle must meet in order to obtain a required inspection sticker are not found among the sections of Art. XIV, which specify the regulations and requirements of equipment, nor are those criteria found in Art. XV, which concern the inspection of a motor vehicle. In fact, nowhere in Art. 6701d, supra, can this criteria be found. This is because the criteria is set out in elaborate detail in the "Rules and Regulations for Official Vehicle Inspection Stations and Certified Inspectors," hereinafter Rules and Regulations, which can be found in the County Clerk's Offices of every county of this State, as well as in every vehicle inspection station. See Tex.Public Safety Commission, 37 Tex.Adm.Code Sec. 23.41 (November, 1977) ("Inspection Items, Procedures, and Requirements").

The criteria for obtaining an annual inspection sticker for a motor vehicle is much more stringent than the standards for

equipment set out under Art. XIV.[1] Two standards co-exist: one standard for automobiles before its inspection sticker has expired, and another set of criteria to obtain inspection certification.

If a tail light emits a red light per § 111, but the dome to that tail light has a hairline fracture which would either emit some white light or allow moisture to penetrate the dome, the tail light would not pass inspection.[2] Arguably, such a motor vehicle could be legally driven until the tail light degenerated to the point that it did not meet the standards of Art. XIV, § 111, i.e., failure to emit a red light for a distance of 1,000 feet, or until it violated Art. XV, i.e., driving a motor vehicle without a valid inspection sticker, whichever came earlier.

Given the above, it is or should be clear that the absolute longest one could drive his motor vehicle with an insignificant fracture in the vehicle's tail light would be for the inspection period. If the tail light lens became fractured after inspection, but never degenerated to the point of either being a safety hazard or violating the standards of Art. XIV, the driver of the vehicle would be free from arrest.[3]

We find that in making the determination whether the tail light lens on appellant's motor vehicle constituted a violation of the Motor Vehicle Code of this State we must not evaluate that tail light lens under the criteria for inspection found in the County Clerks' offices or in licensed vehicle inspection stations throughout the State, because such would be an unreasonable requirement on the motorists of this State. Instead, we will make the determination whether a violation of Art. 6701d, § 111, supra, occurred when the arresting officer stopped appellant's motor vehicle.

We find that the court of appeals application of § 111 to the present case is an appropriate one.[4] There is no evidence in the record before us that the tail light on appellant's vehicle failed to emit a red light as required by a plain reading of § 111. Nor is it logical to conclude that a sliver of white light, which did not "wash out" the red hue of the tail light, presented a safety hazard to anyone or anyone's property, including appellant's vehicle and the persons then located therein when the police officer stopped the vehicle.

Our research has not yet revealed anything of an authoritative nature that might

---

**1.** Compare § 111, supra, requiring a tail lamp to emit a red light plainly visible from 1000 feet, with the criteria for inspection requiring inspection and rejection for "Lamp that does not *completely* emit a red light plainly visible 1000 feet to the rear" and "Lamp lens is *cracked, broken,* painted, missing, discolored, or does not fit properly." Rules and Regulations, supra, at C–19. (Emphasis added.)

Other criteria for inspection include the following: "Tires—'Inspect for and reject any tire which has been repaired temporarily by the use of blowout patches and boots.'" (To be distinguished from nail hole plugs or patches which are not cause for rejection.) Rules and Regulations at C–14; "Wheel Assembly—'Inspect and reject wheel nuts, studs, and clamps which are loose, broken, missing, or mismatched. Adequate thread engagement is imperative. Studs and nut threads on wheel lugs must engage completely through the entire threaded portion of the nut.'" Rules and Regulations at C–16; "Reflectors—'Inspect and reject if reflector is discolored, deteriorated, or painted.'" Rules and Regulations at C–20; "Windshield Wiper—'Inspect and reject if wiper blade has been damaged, hardened, or has badly worn rubber elements.'" Rules and Regulations at C–6; "Exhaust Emission System—(Applicable only to vehicles which are 1984 or later models; thus not

applicable to this cause because appellant's vehicle was an earlier model vehicle); "Inspect and reject if the air pump (air injection type) belt is loose or removed." Rules and Regulations at C–18. Also see generally, "Vehicle Emission Inspection and Maintenance Rules and Regulations for Official Vehicle Inspection Stations and Certified Inspectors", June, 1984, which is a 155 page document complete with photographs, graphs, and charts.

**2.** A "crack" is defined as "any break that allows moisture to penetrate the interior of the lamp unit or allows a white light to be emitted to the rear of any vehicle." Rules and Regulations at C–18 and C–19.

**3.** Art. 6701d, §§ 147 and 148(a), V.A.C.S., provides that "except for the offense of speeding, an officer may arrest and take into custody one seen committing a traffic offense." See, for example, *Christian v. State,* 592 S.W.2d 625 (Tex.Cr.App.1980), and the cases cited therein at page 629. Also see § 153 which provides: "Any peace officer is authorized to arrest without warrant any person found committing a violation of any provision of this Act."

**4.** The State, in its petition for discretionary review, states that "The Court of Appeals decision

be found in print that might reflect or indicate that the Legislature of this State intended to permit a peace officer to arrest without a warrant a citizen-motorist whose motor vehicle has not passed the rigorous criteria of inspection and there is no showing that the vehicle did not have a valid inspection sticker clearly visible to a peace officer, and which meets the requirements of Art. XIV, supra, and the vehicle is not a safety hazard. In this instance, there is no evidence in the record that the tail light on appellant's vehicle failed to emit a red light as required by a plain reading of § 111. The arresting officer in this cause testified that the red light in the tail light on appellant's vehicle was visible to him at all times.

The sole reason the officer gave for stopping appellant's vehicle was that he believed appellant had committed a tail light "infraction" of the traffic laws. Given what we have stated, we find and hold that the officer was not justified in stopping appellant's vehicle for that reason, nor did he have probable cause to stop appellant's vehicle. Also see and compare *Willett v. State*, 454 S.W.2d 398 (Tex.Cr. App.1970); *Hall v. State*, 488 S.W.2d 788 (Tex.Cr.App.1973); *Pruitt v. State*, 389 S.W.2d 475 (Tex.Cr.App.1965). Furthermore, the inarticulate hunch, suspicion, or good faith belief of the arresting officer was not sufficient to constitute probable cause for arrest, search, or detention of appellant and his passengers. *Talbert v. State*, 489 S.W.2d 309 (Tex.Cr.App.1973). Contrast the above cases with such cases as *Praska v. State*, 557 S.W.2d 83, 87 (Tex. Cr.App.1977); *Drago v. State*, 553 S.W.2d 375, 377 (Tex.Cr.App.1977); and *Soileau v. State*, 156 Tex.Cr.R. 544, 244 S.W.2d 224, 226 (1970). The opinions in each of those cases clearly reveal that there was some evidence of an initial legitimate traffic stop. Such does not exist here.

Because the evidence was seized as a result of an unlawful stop, it became inadmissible under Art. 38.23, supra. The court of appeals correctly so held. Its judgment is affirmed.

MILLER, CAMPBELL and WHITE, JJ., concur in the result.

McCORMICK, J., dissents.

---

presents two issues for review by this Court: (1) Is Article 6701d, Section 111, V.A.C.S. violated by a taillight which emits both red and white light? The State says yes. (2) Did the arresting officers have probable cause to stop the appellant's vehicle for a traffic offense? The State says yes." (Page 2 of State's P.D.R.) Thus, it is obviously clear that the State admits that § 111 is the applicable statute in question. Contrary to the State, as did the court of appeals implicitly, we also answer the questions posed in the negative, but do so expressly.