Jack Daniel **FOSTER**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 09–89–293 CR.

Court of Appeals of Texas, Beaumont.

Aug. 28, 1991.

Rehearing Denied Sept. 12, 1991.

Lewis Dickson, DeGuerin & Dickson, Houston, for appellant.

Terry Brown, Dist. Atty., Livingston, for state.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

OPINION

WALKER, Chief Justice.

This is an appeal from a conviction for the felony offense of Aggravated Possession of a Controlled Substance (Cocaine). Appellant was tried before a jury who set his punishment at fifty (50) years confinement in the Institutional Division of the Texas Department of Criminal Justice. In addition, the jury assessed appellant a fine of twenty thousand dollars ($20,000). Appellant raises thirteen (13) points of error on appeal. We will address some points grouped together and some we will address individually. A somewhat detailed recitation of the facts is in order as several of the points of error complain of sufficiency of the evidence at trial.

On March 30, 1989, at approximately 11:20 p.m., Officers Dennis Westerman and Don Mitchell of the Corrigan Police Department observed appellant travelling on Highway 59 in a 1983 Lincoln Town Car. The officers stopped appellant for what was ostensibly a failure to display a visible license plate on the motor vehicle appellant was operating. After exiting their patrol unit and explaining to appellant the reason for the stop, appellant directed the officers' attention to the rear window of the Lincoln where a paper "dealer's" temporary license plate was displayed. The officers admitted during their testimony at trial that because of the darkness and the fact that the rear window of the Lincoln was slightly tinted, they were unable to see the valid paper license plate displayed in the rear window. Officer Westerman admitted that the paper license plate was properly displayed and if he had seen the paper license plate the officers would not have stopped appellant as no offense had occurred.

At any rate, upon stopping appellant, Officer Westerman asked appellant for his driver's license and proof of insurance. Officer Westerman testified that appellant stated that he (appellant) had purchased the Lincoln that day. Appellant's proof of insurance card listed three vehicles that appellant was carrying insurance on and, although appellant had stated that he had just purchased the Lincoln that day (March

30, 1989), the effective date of the insurance coverage on the Lincoln was November 28, 1988. Officer Westerman testified that this apparent discrepancy aroused his suspicion that all was not right with appellant. Officer Westerman stated that although appellant was very neat in his dress and was very cooperative he observed that appellant was extremely nervous. Officer Westerman further testified that his suspicion of appellant was heightened as he continued to talk with appellant in that appellant gave conflicting answers as to his (appellant's) destination, stating one time his destination was Shreveport, Louisiana and at another time that his destination was Many, Louisiana. Furthermore, through police training dealing with drug courier profiles, Officer Westerman was also suspicious of the fact that although appellant had stated that he would be staying overnight at his destination, appellant had no "hang-up" clothing inside his car.

The above factors combined to result in Officer Westerman asking appellant if appellant would consent to a search of the Lincoln. Both officers testified that appellant replied, "Sure." Appellant retrieved the keys from the ignition and unlocked the trunk for the officers to inspect. While Officer Westerman concentrated his search on the left side area of the trunk, Officer Mitchell searched the right side of the trunk area. Officer Westerman testified that appellant was very cooperative and did not resist the search at any time nor request that the officers stop their search. In checking the left side of the trunk, Officer Westerman observed a money bag partially protruding from the left rear wall of the trunk behind a cardboard partition. Officer Westerman testified that appellant admitted that the money bag belonged to him (appellant), but did not know where the key to the bag was. The money bag was locked and apparently had something inside of it. Appellant stated that he did not know what was inside the bag. Also behind the cardboard partition on the left side of the trunk Officer Westerman located a one-pound container of vitamin powder.

On the other side of the trunk, Officer Mitchell had pulled up the cardboard partition and observed a "Bugler" tobacco container. This six ounce container was sitting in a recessed area of the vehicle's body. Officer Mitchell testified that he used to repair automobile bodies for a living and his instincts as an experienced body man caused him to lift up the cardboard and look under it. Officer Mitchell further testified that upon retrieving the Bugler tobacco container he took the lid off but did not notice anything out of the ordinary and placed the container back inside the trunk. Shortly after that, Officer Westerman picked up the Bugler container and managed to twist off the bottom portion of the container revealing a white powdery substance that later tested positive as cocaine. Appellant denied any knowledge of the cocaine. It was at this point that appellant was placed under arrest and the Lincoln was inventoried. During the inventory of the vehicle, the officers found a pocket calculator. Inside of the battery compartment of the calculator were what appeared to be four marijuana cigarettes. The presence of marijuana was confirmed by testimony of the DPS chemist. The officers also located a plastic baggie inside appellant's coat which was laying on the back seat of the vehicle. This baggie contained what the officers described as "marijuana residue," although, we have no laboratory confirmation in the record before us. Subsequent to the arrest of appellant, the officers secured a search warrant for the money bag and it was cut open. Inside the money bag were twenty (20) small white tablets which, when analyzed, were found to contain the controlled substance Glutethimide. Mike McGeehon, a chemist with the Texas Department of Public Safety, testified that Glutethimide was a hypnotic, a sleeping-type medication.

Appellant's wife was called to testify in the case for the defense and testified to, among other things, the fact that the calculator and the bank bag did indeed belong to appellant. The major witness for the defense, however, was James Watson, III, the owner of Julius Auto Sales and Service located in Houston. Appellant was an employee of Julius Auto Sales at the time of his arrest for the charge in the instant case. Watson testified that appellant handled the "hauling end of my business." Watson further testified that the 1983 Lincoln in question was owned by Julius Auto Sales at the time of appellant's arrest and that appellant was driving the vehicle to an auction in Shreveport in hopes of selling the vehicle at the auction. Watson testified that the Lincoln had been brought back to Houston from Dallas because the vehicle would not sell. The Lincoln was then cleaned up and repairs made to it for three days prior to March 30, 1989 when appellant left driving the vehicle to the auction in Shreveport. Watson testified that appellant generally supervised such cleaning and repairing of vehicles but the appellant did not personally work on the vehicles. Watson testified that three mechanics in particular worked on the Lincoln: Rick Allen, George Cavalier, and Greg Williams. Furthermore, after learning of appellant's arrest for possession of controlled substance, Watson suspected that George Cavalier had placed the cocaine in the vehicle as Watson had previously discovered that Cavalier had been selling drugs out of the back door of Watson's business. Watson further testified that Cavalier was, at the time of trial, in the penitentiary for a drug conviction. Watson also testified that he himself had been convicted in 1978 in Louisiana for "distribution" of marijuana and served six (6) years in a Louisiana penitentiary. Watson further testified that those employees that worked on the Lincoln prior to turning the vehicle over to appellant, specifically George Cavalier, had access to the trunk area and all knew appellant's destination was Shreveport. Appellant did not testify.

■ Appellant's first seven points of error base their complaint on the trial court's overruling of appellant's pretrial motion to suppress. Points of error one and two are presented in the following manner:

1. The trial court committed reversible error by overruling appellant's motion to suppress all evidence, including the cocaine and oral statements attributed to

appellant, gained by the State because there was no probable cause to believe that appellant had violated Art. 6675a–3e, sec. 5, V.A.T.S. (1977).

2. The trial court committed reversible error by overruling appellant's pretrial motion to suppress all evidence, including the cocaine and oral statements attributed to appellant, gained by the State because, even assuming arguendo some cause, probable or otherwise, for the stop, it completely evaporated once the officers were shown the perfectly legal dealer's tag.

The pertinent portion of TEX.REV.CIV. STAT.ANN. art. 6675a–3e, § 5 (Vernon 1977) reads:

Any person who operates a passenger car or a commercial motor vehicle upon the public highways of this State at any time without having displayed thereon, and attached thereto, two (2) license number plates, one (1) plate at the front and one (1) at the rear, which have been duly and lawfully assigned for said vehicle for the current registration period or have been validated by the attachment of a symbol, tab, or other device for the current registration period, shall be guilty of a misdemeanor; this shall not apply to dealers operating vehicles under present provisions of the law,....

Appellant focuses his argument on the last two lines of the above cited statute apparently exempting dealers from having to display license plates in the manner prescribed and, therefore, causing the initial stop to be unlawful. Under the facts of the instant case, however, this argument has no merit. The officers testified that they saw no license plate being displayed by appellant's vehicle. How were they to know that he was a dealer? Under the circumstances presented to the officers at the precise moment when appellant drove past their patrol car and appellant's vehicle did not appear to have a rear license plate, the officers had probable cause to believe that they were witnessing a violation of the law. Only after stopping appellant and appellant's subsequent identification of himself as a dealer as well as the pointing out of the paper license plate being displayed in the tinted rear window could the officers have been made aware that appellant had not violated article 6675a–3e, § 5. Appellant relies on *Vicknair v. State*, 751 S.W.2d 180 (Tex.Crim.App.1986) in support of the illegality of the stop. *Vicknair* is distinguishable in that there the officer observed a cracked taillight lens emitting white light as well as red light. The Court of Criminal Appeals found that the statute declaring such equipment defective should not be the basis for criminal sanctions, "because such would be an unreasonable requirement on the motorists of this State." *Vicknair, supra* at 189. The Court in *Vicknair,* used a less stringent statute to decide whether or not the police had probable cause to stop the defendant. They found that there was evidence that the officer observed red light being emitted from the cracked taillight lens, therefore the less stringent statute was satisfied and, as such, no probable cause existed for defendant's stop.

We do not have the *Vicknair* scenario presented to us as, in the instant case, the officers saw *no* license plate. Appellant is mistaken in his brief in stating that there was no testimony that appellant's car displayed no tags at all on the rear of the vehicle. During cross-examination, Officer Westerman is asked:

Q. You said you stopped him because he didn't display a tag, correct?

A. Correct.

--------

Q. Are you saying that you observed the tag right after he approached you and as he was making the turn, when it was dark? You're saying that you could form an opinion that he wasn't displaying a tag in those conditions?

A. Where the tag was supposed to be displayed upon the vehicle, he did have license plate lights and there was no type of tag at all. It was illuminated by the license plate light.

Appellant's second point of error avers that even if probable cause existed to stop appellant, it completely evaporated once the officers were shown the dealer's

tag. To this assertion we are tempted to immediately reply, "So what?" Officer Westerman's testimony points to the fact that approximately three minutes elapsed from the stop of appellant's vehicle to the point when the officer felt he had sufficient articulable facts from which to ask appellant if he was hauling contraband and subsequently request appellant to submit his vehicle to a search. The articulable facts (1. appellant's extreme nervousness, 2. the discrepancy in insurance date for the Lincoln and appellant's claim to have purchased the car on the day of the stop, 3. the absence of any hang-up clothing on an overnight trip, and 4. the inconsistent statement of destinations) were learned or perceived during the proper routine identification procedure that police conduct after every traffic stop. Indeed, while probable cause for arresting (or at least ticketing) appellant for failure to display a rear license plate may have evaporated, *contemporaneous* to this evaporation was the growing probable cause to suspect appellant to be in violation of the controlled substance laws of this state. We find that the officers had probable cause to stop appellant and that their initial detention was routine and unintrusive. Points of error one and two are overruled.

Points of error three, four and five are presented to us as follows:

3. The trial court committed reversible error by overruling appellant's pretrial motion to suppress all evidence, including the cocaine and oral statements attributed to appellant, gained by the State because, even assuming arguendo the propriety of appellant's initial detention, its totally unrelated scope became excessive and unreasonable.

4. The trial court committed reversible error by overruling appellant's pretrial motion to suppress all evidence including but not limited to the cocaine, gained by the State, because the State failed to discharge its burden to prove by clear and convincing evidence that appellant freely, voluntarily and unequivocally consented to the search.

5. The trial court committed reversible error by overruling appellant's pretrial

motion to suppress all evidence, including but not limited to the cocaine, gained by the State because appellant's purported consent was impermissibly and irretrievably tainted by virtue of the preceding illegal detention (i.e., no probable cause or, it had evaporated, or its ensuing excessive scope).

As discussed above, the evidence before the trial court supported the propriety of the traffic stop of appellant and a reasonable suspicion of appellant manifested itself during the routine identification and information gathering procedure conducted by the police at the scene of the stop. This reasonable suspicion caused the officers to ask appellant if he would consent to a search of his vehicle. Consent to search is one of the established exceptions to the requirements of both a warrant and probable cause. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Davis v. United States*, 328 U.S. 582, 66 S.Ct. 1256, 90 L.Ed. 1453 (1946). Under this concept, the protections afforded by the Fourth Amendment and article I, § 9 of the Texas Constitution may be waived by an individual consenting to a search. *Reyes v. State*, 741 S.W.2d 414 (Tex.Crim.App.1987); *Paprskar v. State*, 484 S.W.2d 731 (Tex.Crim.App.1972, *overruled on other grounds*); *Allen v. State*, 487 S.W.2d 120 (Tex.Crim.App.1972).

In *Allen*, narcotics agents received a tip that the defendant had a large supply of contraband in his car. The agents followed defendant to a service station that the defendant owned. After identifying themselves as police officers, the agents related to defendant that they had reason to believe he was in possession of contraband in his vehicle. The agents then requested permission to search defendant's vehicle. One of the agents testified at trial that the defendant responded that he (defendant) would be glad to give the agents permission to search his car. A search was conducted and contraband was located. The defendant later challenged the initial detention and subsequent verbal consent to search. The Court of Criminal Appeals in *Allen* recognized the State's burden to

show by clear and convincing evidence that the consent was freely and voluntarily given. *Allen, supra* at 121. The Court in *Allen* further elaborated:

> Consent to search must be shown to be positive and unequivocal. There must not be duress or coercion, actual or implied. *Amos v. United States,* 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654 [1921]; *Overton v. N.Y.,* 393 U.S. 85, 89 S.Ct. 252, 21 L.Ed.2d 218 [1968]. The officers in the instant case were in plain clothes and no guns were visible or displayed. No representation was made to appellant that a search warrant would be obtained if he did not give his consent. Appellant did not testify nor did he offer any evidence in his behalf. We find no testimony which would suggest that there was duress or coercion, actual or implied, in obtaining the consent to search.

*Allen, supra.*

The above description of the facts and analysis of *Allen* is quite similar to the circumstances presented to us in the instant case with the exception that the officers here were in full uniform. Furthermore, the knowledge of a right to refuse to consent to a search is not a prerequisite of "voluntary" consent. *Kolb v. State,* 532 S.W.2d 87, 89, n. 2 (Tex.Crim.App.1976). In the facts presented to us, we, too, find no testimony which would remotely suggest any duress or coercion, actual or implied, on the part of either Officer Westerman or Officer Mitchell with respect to appellant's consent to search the vehicle. We also wish to restate the fact that appellant's continued detention was entirely proper as with each routine question to appellant suspicion continued to mount that appellant was in possession of some sort of contraband. Points of error three, four and five are overruled.

Point of error six complains:

6. The trial court committed reversible error by overruling appellant's pretrial motion to suppress all evidence, including but not limited to the cocaine, gained by the State because, even assuming arguendo the evidence sufficient to clearly and convincingly show that appellant freely, voluntarily and unequivocally consented to the search of the vehicle, the scope of such consent did not extend to the Bugler tobacco can.

Appellant argues in his brief that, "It is undisputed that Appellant never gave permission for the officer to pry open the right panel of the trunk or to open the Bugler tobacco can." Appellant appears to misconstrue the testimony of Officer Mitchell who initially discovered the Bugler can. During direct examination by the State, Officer Mitchell testified to the following:

Q. Where did you find it at?

A. It was in the trunk on the right side, which would be the passenger side, under—on the far right side under the cardboard cover in the bottom of the trunk.

Q. Well, was it very difficult for you to dig around and find that?

A. No, sir. Nothing more than you have when you raise the cardboard up and there it was.

In addition, appellant cites *May v. State,* 582 S.W.2d 848 (Tex.Crim.App.1979) for support of his claim that the search exceeded the scope of appellant's consent. *May* is quite distinguishable from the facts in the instant case. In *May,* the defendant was the driver of a van owned by the parents of the juvenile passenger. The police stopped the van because it was suspected to have been involved in some recent burglaries in which some tools were stolen. The juvenile consented to a search of the van. During the course of the search, an officer came across a lunch box belonging to the defendant. As he was about to open it, the officer asked the defendant who the lunch box belonged to and the defendant replied that it belonged to him (defendant). Inside the lunch box, among other things, was some marijuana. Defendant was arrested. During a subsequent suppression hearing the officer admitted that he had no reason to believe that there was marijuana in the lunch box when he picked it up. The defendant was convicted and, on appeal, the Court of Criminal Appeals reversed the conviction stating that absent a demonstration by the State that the juvenile, whose parents owned the van and who had con-

sented to the search of the van, had standing to resist the search and seizure of the defendant's lunch box as an invasion of the juvenile's own Fourth Amendment rights, the juvenile was powerless to consent to the search and seizure of property of another. *May, supra* at 851. In the instant case, appellant was the sole occupant of the vehicle and the officer's request was to search "his vehicle." As the evidence reflects that appellant voluntarily retrieved the keys to the trunk and opened it for the officers, we find that appellant was fully aware of and freely consented to the fact that the officers' search was going to include a complete and thorough search of the trunk of the vehicle. Point of error six is overruled.

■ Point of error seven states:

7. The trial court committed reversible error by overruling appellant's pretrial motion to suppress all evidence, including but not limited to the cocaine and oral statements attributed to appellant, gained by the State because, *as a matter of law*, the procedure here employed by the State was pretextual and unconstitutionally circumvented traditional notions of probable cause and the general warrant requirement.

Appellant elaborates on this point of error by stating in his brief, "The 'flagrancy' of police misconduct that has already been discussed is also the basis for finding this entire procedure pretextual. The arrest and detention based upon a 'non-offense' was a mere subterfuge in order to intimidate Appellant and request for consent to search, all in circumvention of traditional notions of probable cause and the general warrant requirement." Needless to say, based upon our analysis and discussion of the facts under the previous points of error, we strongly disagree with this characterization of said facts presented to the trial court and contained in the record before us. As for appellant's claim that the stop was a pretext for the eventual search of the vehicle, we are guided by language in the recent case of *Gordon v. State*, 801 S.W.2d 899 (Tex.Crim.App.1990). The Court in *Gordon* reexamined the status of

the "pretext doctrine" and concluded with the following:

After analyzing the issue, we also believe our decision to overrule *Bain* [*v. State*, 677 S.W.2d 51 (Tex.Cr.App.1984)] and *Dodson* [*v. State*, 646 S.W.2d 177 (Tex. Cr.App.1983)] was incorrect. [footnote omitted] Those cases stand for the proposition that if a valid stop is made for any reason (e.g., an actual offense) and the officer's objective conduct in response (i.e., search, questioning, transport) does not exceed the constitutional and statutory limits applicable to such a stop, additional subjective intentions, suspicions, or motivations on the part of the officers are irrelevant. In other words, as we have stated *ante*, although there may be other Fourth Amendment violations leading to suppression, there is no "pretext doctrine" applicable. To the extent *Black* [*v. State*, 739 S.W.2d 240 (Tex.Cr.App.1987)] stands for the proposition cited in *Amador–Gonzalez* [*v. United States*, 391 F.2d 308 (5th Cir. 1968)] but disavowed in *Causey* it is overruled.

*Gordon, supra* at 911.

As we have previously found that a valid traffic stop was made upon appellant and that the officers' conduct analyzed objectively was consistent with constitutional and statutory limits on such a stop, no "pretext" complaint is applicable. Point of error seven is overruled.

Points of error eight, nine, and ten contend:

8. The trial court committed reversible error by overruling appellant's repeated motions for an instructed verdict of acquittal on the grounds that the evidence was insufficient as a matter of law to sustain the allegation that he knowingly possessed cocaine.

9. The trial court committed reversible error by overruling appellant's repeated motions of an instructed verdict of acquittal on the grounds that the evidence was insufficient as a matter of law to prove that appellant knew the nature of the substance he allegedly possessed.

10. The evidence was insufficient as a matter of law to sustain appellant's conviction because it did not affirmatively link him to knowledge and control of the cocaine and did not exclude the reasonable hypothesis that the cocaine had been placed there by one or more of the four or five other people who had had recent access to the car.

Although this is a circumstantial evidence case, the standard for reviewing the sufficiency of the evidence is no different from that involving a direct evidence case. In circumstantial evidence cases, however, the "reasonable hypothesis" analysis is also utilized. *See, Wilford v. State,* 739 S.W.2d 854 (Tex.Crim.App.1987); *Vaughn v. State,* 607 S.W.2d 914 (Tex.Crim.App. 1980). The standard for reviewing sufficiency of evidence is whether viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found beyond a reasonable doubt the essential elements of the crime charged. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Butler v. State,* 769 S.W.2d 234, 239 (Tex.Crim.App. 1989).

■ When an individual is charged with possession of a controlled substance, the State must prove that the person exercised actual care, custody, control, or management over the contraband *and* that the person knew the item(s) possessed to be contraband. *Humason v. State,* 728 S.W.2d 363 (Tex.Crim.App.1987); *McGoldrick v. State,* 682 S.W.2d 573 (Tex.Crim. App.1985). A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that circumstances exist. TEX.PENAL CODE ANN. § 6.03(b) (Vernon 1974); *Humason, supra* at 365. Consistent with the mens rea requirements described above for possessory offenses under the Controlled Substances Act (now the Texas Health & Safety Code), the Court of Criminal Appeals has held that the State must provide evidence of "affirmative links" between a defendant and the controlled substance which he is charged

with possessing if the defendant was not in exclusive possession of the place where the controlled substance was found. *Humason, supra* at 365; *McGoldrick, supra* at 578. Such affirmative links customarily emerge from the combining of several factors and the logical force they have within this combination. *Whitworth v. State,* 808 S.W.2d 566, 569 (Tex.App.—Austin 1991, no pet.); *Trejo v. State,* 766 S.W.2d 381, 385 (Tex.App.—Austin 1989, no pet.). The number of factors present is of less importance than the logical force the factors have, alone or in combination, in establishing the elements of the offense. *Whitworth, supra* at 569; *Trejo, supra* at 385. Each case must be reviewed on its own facts for evidence of sufficient affirmative links in a particular case. *Humason, supra* at 367, n. 12.

■ Among such additional facts which can establish the affirmative link are: the contraband was conveniently accessible to the accused, *Hahn v. State,* 502 S.W.2d 724 (Tex.Crim.App.1973); the accused was the owner of the place where the contraband was found, *Moulden v. State,* 576 S.W.2d 817 (Tex.Crim.App.1978); the accused was the driver of the automobile in which the contraband was found, *Aldridge v. State,* 482 S.W.2d 171 (Tex.Crim.App.1972); and conduct of the accused indicated a consciousness of guilt, *Gutierrez v. State,* 628 S.W.2d 57 (Tex.Crim.App.1980). In the instant case, the jury was presented with evidence of each of the above factors as well as the fact that two of appellant's personal belongings, the calculator and the money bag, contained some form of contraband each. Furthermore, Raymond Edmonds, Assistant Chief Deputy with the Polk County Sheriff's Department as well as being its narcotics officer, testified that individuals that deal in cocaine "cut" or "step on" cocaine to increase the volume so as to have more to sell. According to Deputy Edmonds, one of the substances used to cut cocaine is vitamin powder. Recall Officer Westerman's testimony of finding a one pound container of vitamin powder behind the cardboard partition on the left side of the trunk. Appellant's money bag was also found protruding from the

cardboard partition on the left side of the trunk. As the Austin court said in *Whitworth*, the logical force of a set of factors depends upon the degree to which they tend affirmatively to link an accused to the contraband. *Whitworth, supra* at 569. Adding the extreme nervousness of appellant with all of the other factors listed above leads us to conclude that the State provided sufficient affirmative links for any rational trier of fact to conclude that appellant knowingly possessed the cocaine beyond a reasonable doubt.

Admittedly, it is difficult for a reviewing court when presented with a set of facts and circumstances similar to those of the instant case to engage in the legal gymnastics mandated by case law in order to arrive at a legally correct result. Specifically, we find it somewhat difficult to filter the "affirmative link" rule in possession cases through the "exclude every other reasonable hypothesis" rule in sufficiency of circumstantial evidence cases. It appears to us that as each link is forged affirming the connection between the accused and the contraband, and therefore strengthening the likelihood of an affirmance of guilt, the existence of any other reasonable hypotheses shrink proportionally. Each fact need not point directly and independently to the guilt of the accused, as the cumulative effect of all the incriminating facts may be sufficient to support the conviction. *Hooker v. State*, 621 S.W.2d 597, 601 (Tex.Crim.App.1980); *Vaughn, supra* at 921. In the instant case, appellant states that the reasonable hypothesis excluding appellant's guilt is that the evidence showed that any one of four or five people who had access to the vehicle had the opportunity to place the cocaine under the cardboard partition. We agree with appellant to the extent that this scenario does present us with an alternate hypothesis. We feel it is, however, not a reasonable one. If someone else had hidden the cocaine in the trunk of appellant's vehicle, for what purpose was it done? Was appellant simply to drive around Texas and Louisiana with cocaine hidden in his trunk? There was no evidence that the vehicle was to be turned over to anyone in

Shreveport. To the contrary, the evidence appears to be that the Lincoln had a history of not selling at auctions. Mike McGeehon, the DPS chemist, testified that the cocaine weighed 112.45 grams, and Deputy Edmonds testified that a good ballpark figure of the street value of cocaine is $100 per gram. That would mean that someone placed cocaine with the street value of $11,245 in appellant's vehicle. If this was done without appellant's knowledge, as appellant contends, then wherever the Lincoln went, so went the cocaine, all $11,125 worth. This presents, we feel, no reasonable hypothesis. Any hypothesis intended as a reasonable one must be consistent with the facts proved and the circumstances, and the supposition that the act may have been committed by another person must not be out of harmony with the evidence. *Vaughn, supra* at 921; *Flores v. State*, 551 S.W.2d 364 (Tex.Crim.App.1977). Points of error eight, nine, and ten are overruled.

Appellant's final three points of error present us with the following:

11. The trial court committed reversible error by refusing to give appellant's requested charge on the law of pretextual arrest and included guidance for the jury insofar as the full application of the exclusionary rule with respect to such circumstance (or a reasonable doubt as to such).

12. The trial court committed reversible error by refusing, over appellant's objection in the form of his own requested instruction, to give an instruction that would give the jury meaningful guidance in connection with the full application of the exclusionary rule (i.e., to disregard all evidence, including the physical cocaine and testimony about it—rather than the confounding, impotent instruction "you will disregard the testimony of the officer relative to his stopping the defendant and his conclusions drawn as a result thereof" that was given).

13. The trial court's charge on the grounds for the stop and the operation and scope of the exclusionary rule as it relates thereto was fundamentally erro-

neous because, plainly and simply put, the jurors were never instructed that they could disregard evidence of the cocaine and thus, since there was no meaningful submission of this key defensive issue, appellant was deprived of a fair and impartial trial and the harm is properly categorized as egregious.

TEX.CODE CRIM.PROC.ANN. art. 38.23(a) (Vernon Supp.1991) provides:

(a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

■■■■ In the instant case, appellant mistakenly assumes that he is entitled to an instruction under article 38.23 regardless of the state of the evidence. A trial court is required to include a properly worded article 38.23 instruction in the jury charge *only* if there is a factual dispute as to how the evidence was obtained. *Thomas v. State,* 723 S.W.2d 696 (Tex.Crim.App.1986). Where no such issue is raised by the evidence, the trial court acts properly in refusing a request to charge the jury. *Murphy v. State,* 640 S.W.2d 297 (Tex.Crim. App.1982). In the instant case, no witness was called by appellant to controvert the testimony of Officers Westerman and Mitchell that they did not see appellant's vehicle displaying a license plate, nor did the cross-examination by appellant's attorney succeed in doing so. The fact that appellant's vehicle did display a paper dealer's license plate is not in dispute, but neither is the fact that both officers did not initially see it displayed inside the vehicle's tinted rear window. *See, Rose v. State,* 470 S.W.2d 198 (Tex.Crim.App.1971). Furthermore, as our discussion under appel-

lant's point of error seven made clear, the "pretext stop" doctrine is, for all intents and purposes, dead in Texas. Appellant would therefore have no right to any instruction involving the concept of "pretext stop" being provided to the jury whatsoever. Additionally, appellant's attempt to raise a refusal by a trial court to give the jury an article 38.23 instruction to fundamental proportions is misplaced as the Court of Criminal Appeals declined to do so in *Kelly v. State,* 669 S.W.2d 720 (Tex. Crim.App.), *cert. denied,* 469 U.S. 963, 105 S.Ct. 362, 83 L.Ed.2d 298. We conclude that appellant was not entitled to an article 38.23 instruction, nor can appellant complain of the instruction he did receive from the trial court with regard to the article 38.23 issue. *See, Ex parte Green,* 548 S.W.2d 914 (Tex.Crim.App.1977). Points of error 11, 12, and 13 are overruled. Having found no error in the record before us of the proceedings in the trial court, we affirm the judgment and sentence of the trial court.

AFFIRMED.