# FOR PUBLICATION



FILED

Aug 05 2013, 5:24 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JOHN T. WILSON**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

BRAD KROFT,                              )
                                         )
    Appellant-Defendant,             )
                                         )
        vs.                        )    No. 49A04-1211-CR-593
                                         )
STATE OF INDIANA,                        )
                                         )
    Appellee-Plaintiff.              )

INTERLOCUTORY APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Becky Pierson-Treacy, Judge
Cause No. 49F19-1204-CM-026557

**August 5, 2013**

**OPINION - FOR PUBLICATION**

**VAIDIK, Judge**

## Case Summary

Indiana Code section 9-19-6-4 requires motor vehicles to have two tail lamps that, when lighted, emit a red light plainly visible from a distance of 500 feet to the rear. In this case, a state trooper stopped Brad Kroft because one of his two working tail lamps had a dime-sized hole that let out a miniscule amount of white light. Because both tail lamps worked and the tail lamp with the tiny hole was overwhelmingly red when illuminated, we find that the state trooper did not have reasonable suspicion to stop Kroft. We therefore reverse the trial court's denial of Kroft's motion to suppress.

## Facts and Procedural History

Around 1:30 a.m. on April 22, 2012, Kroft was driving with his wife Heidi Kroft in their Jeep Commander on 96th Street near Hague Road in Indianapolis. Both tail lamps on the Jeep worked; however, there was a crack with a dime-sized hole in the plastic covering of the passenger-side tail lamp. *See* Def.'s Ex. A (photograph of Kroft's illuminated passenger-side tail lamp). According to both Kroft and Heidi, because the hole was so small, the tail lamp did not emit any discernible white light; rather, the tail lamp emitted primarily red light. Tr. p. 8-9, 11, 13, 16. Indiana State Police Trooper Mike McCreary stopped Kroft because he "had a broken taillight. The lens on the taillight was cracked and it was emitting a white light to the rear of the vehicle." *Id.* at 19. Trooper McCreary believed it was a violation of Indiana law to have a broken tail lamp. *Id.* at 20-21.

As a result of the traffic stop, the State charged Kroft with Class A misdemeanor operating a vehicle with an alcohol concentration equivalent of 0.15 or more and Class C

2

misdemeanor operating a vehicle while intoxicated. Kroft filed a motion to suppress all evidence obtained as a result of the traffic stop, arguing that Trooper McCreary lacked reasonable suspicion to stop him because his Jeep had two working tail lamps, even though the passenger-side tail lamp had a dime-sized hole. The trial court held a hearing on Kroft's motion to suppress. Kroft entered into evidence Defendant's Exhibit A, which is a photograph of Kroft's illuminated passenger-side tail lamp showing the crack with the dime-sized hole.

After taking the matter under advisement, the trial court found that the stop was legal and therefore denied Kroft's motion to suppress. *Id.* at 34-35. This interlocutory appeal pursuant to Indiana Appellate Rule 14(B) now ensues.

### Discussion and Decision

Kroft contends that the trial court erred in denying his motion to suppress. The State has the burden to show that the measures it used to seize evidence were constitutional. *State v. Sitts*, 926 N.E.2d 1118, 1120 (Ind. Ct. App. 2010). Our standard of appellate review of a trial court's ruling on a motion to suppress is similar to other sufficiency issues. *State v. Quirk*, 842 N.E.2d 334, 340 (Ind. 2006). The record must disclose substantial evidence of probative value that supports the trial court's decision. *Id.* We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Id.*

Kroft argues that Trooper McCreary did not have reasonable suspicion to stop him. The Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution protect citizens from unreasonable searches and seizures.

3

*Combs v. State*, 878 N.E.2d 1285, 1288 (Ind. Ct. App. 2008). It is well settled that a police officer may stop a vehicle when he observes a minor traffic violation. *Goens v. State*, 943 N.E.2d 829, 832 (Ind. Ct. App. 2011); *see also Sanders v. State*, 989 N.E.2d 332, 335 (Ind. 2013); *Quirk*, 842 N.E.2d at 340. Such a stop does not run afoul of either constitutional provision. *Combs*, 878 N.E.2d at 1288. Whether the officer's suspicion was reasonable is determined on a case-by-case basis by engaging in a fact-sensitive analysis of the totality of the circumstances. *Sitts*, 926 N.E.2d at 1120. An officer's good-faith belief that a person has committed a traffic violation will justify a traffic stop. *Id.* But "an officer's mistaken belief about what constitutes a violation does not amount to good faith. Such discretion is not constitutionally permissible." *Id.* (quotation omitted). The determination of reasonable suspicion requires de novo review on appeal. *Goens*, 943 N.E.2d at 832.

Indiana Code section 9-19-6-4 provides that a motor vehicle "must be equipped with at least two (2) tail lamps[1] mounted on the rear that, when lighted," emit "*a red light plainly visible* from a distance of five hundred (500) feet to the rear." Ind. Code § 9-19-6-4(a), (c) (emphasis added). The tail lamps must be "located at a height of not less than twenty (20) inches and not more than seventy-two (72) inches."[2] I.C. § 9-19-6-4(d). Further, "[a] tail lamp or tail lamps, together with a separate lamp for illuminating the rear registration plate, must be wired so as to be lighted whenever the head lamps or

---

[1] The Indiana Code does not define tail lamps. However, the CFR defines tail lamps as "steady burning low intensity lamps used to designate the rear of a vehicle." 49 C.F.R. § 571.108 (Dec. 2012).

[2] The mounted heights are measured from the center of the lamp to the level ground upon which the vehicle stands when the vehicle is without a load. Ind. Code § 9-19-6-2.

auxiliary driving lamps are lighted." I.C. § 9-16-6-4(e). A person who violates Section 9-19-6-4 commits a Class C infraction.[3] *See* Ind. Code § 9-19-6-24(b).

In addition, Indiana Code section 9-21-7-2 requires vehicles traveling on Indiana highways between sunset and sunrise to display lighted head lamps and other illuminating devices, which includes tail lamps. *Goens*, 943 N.E.2d at 834 n.3. The purpose of this statute is to require vehicles traveling on darkened roadways to have operating head lamps and tail lamps so that the vehicle is visible to others. *Id.* at 834.

The State argues that Section 9-19-6-4 requires tail lamps, when lighted, to "emit *only* red light." Appellee's Br. p. 3 (emphasis added). And because some white light shone through the dime-sized hole in Kroft's otherwise functioning passenger-side tail lamp, Trooper McCreary had reasonable suspicion to stop Kroft. The State, however, is mistaken about the requirements of Section 9-19-6-4.

First, Section 9-19-6-4 requires tail lamps, when lighted, to emit "a red light plainly visible from a distance of five hundred (500) feet to the rear." I.C. § 9-19-6-4(a). There is no requirement about "only" red light being visible from a distance of 500 feet. *See Merritt v. State*, 829 N.E.2d 472, 475 (Ind. 2005) ("Penal statutes should be construed strictly against the State and ambiguities should be resolved in favor of the accused."). Second, Defendant's Exhibit A shows that while a miniscule amount of white light slipped through the dime-sized hole, the red light was overwhelming. And notably, Trooper McCreary did not allege that the passenger-side tail lamp did not emit red light plainly visible from a distance of 500 feet to the rear. Rather, Trooper

---

[3] There is an exception if the person operates a vehicle that "contains parts and accessories" and "is equipped as required under regulations of the United States Department of Transportation." Ind. Code § 9-19-6-24(a) (formatting altered); *see also* 49 C.F.R. § 571.108.

McCreary said he pulled over Kroft only because he saw white light coming out of the tiny hole. Based on Trooper McCreary's testimony, there is simply no evidence of any danger to motorists approaching the Krofts from behind, as the State attempts to demonstrate on appeal. *See* Appellee's Br. p. 6 ("A motorist approaching from behind must be able to discern the light as being emitted from a taillight to warn of the presence of that vehicle."). Accordingly, Trooper McCreary did not have reasonable suspicion to stop Kroft pursuant to Section 9-19-6-4. *Compare with Freeman v. State*, 904 N.E.2d 340, 342-43 (Ind. Ct. App. 2009) (holding that the police officer had reasonable suspicion to stop the defendant pursuant to Section 9-19-6-4 because only one of two tail lamps was properly working).

The State, however, also argues that Trooper McCreary had reasonable suspicion to stop Kroft pursuant to Indiana Code section 9-21-7-1. Section 9-21-7-1 provides that a person may not drive a motor vehicle on a highway "unless the equipment upon the vehicle is in good working order and adjustment, as required in this article, *and* the vehicle is in a safe mechanical condition that does not endanger the person who drives the vehicle, another occupant of the vehicle, or a person upon the highway." (Emphasis added). Violation of this chapter is also a Class C infraction. *See* Ind. Code § 9-21-7-13. Implicit in Section 9-21-7-1 is a requirement that before operating a motor vehicle, a person must inspect his vehicle to ensure that its equipment, including tail lamps, works. *Freeman*, 904 N.E.2d at 342. The State alleges that the "failure of [Kroft's] taillight to emit only red light rendered it in an unsafe mechanical condition" because "it is for the safety of the approaching motorist[s] to recognize the red taillights for what they are."

6

Appellee's Br. p. 8. The State relies on *Freeman* in support of its argument. But in *Freeman*, the defendant did not have two working tail lamps; rather, he had only one. Accordingly, we found that his car "was not in good working order as required by [S]ection 9-21-7-1" and concluded that the officer validly stopped him because one of his tail lamps was not illuminated. *Freeman*, 904 N.E.2d at 343. Here, however, both of Kroft's tail lamps worked. And there is simply no evidence that Kroft posed any danger to motorists approaching him from behind because of the dime-sized hole in his tail lamp. Trooper McCreary testified that he pulled over Kroft simply because there was white light coming out of the tiny hole; he did not testify that he had trouble spotting Kroft's Jeep from behind. Accordingly, Trooper McCreary did not have reasonable suspicion to stop Kroft pursuant to Section 9-21-7-1. We therefore reverse the trial court's denial of Kroft's motion to suppress.[4]

Reversed and remanded.

KIRSCH, J., and PYLE, J., concur.

---

[4] We acknowledge our Supreme Court's recent opinion in *Sanders*, in which it held that the police officer had reasonable suspicion that the tint on the windows of the defendant's car was in violation of the Window Tint Statute "such that the initial stop was justified." *Sanders*, 989 N.E.2d at 336. However, we find that this case is similar to *Ransom v. State*, 741 N.E.2d 419 (Ind. Ct. App. 2000), *trans. denied*, where the defendant did not commit an infraction and therefore the police officer did not have an objectively justifiable reason to stop him. Here, Trooper McCreary thought that it was an infraction to have a broken tail light, but the statute does not prohibit this. Rather, it requires tail lamps, when lighted, to emit a red light plainly visible from 500 feet to the rear. In addition, there was no evidence that Kroft committed the infraction of unsafe vehicle because he did not pose any danger to motorists approaching from behind.