PATIENCE DRAKE ROGGENSACK, J.
¶ 82. (dissenting). For purposes of this dissent, I assume, arguendo, that the majority opinion's conclusion that Antonio Brown's tail lamp was in "good working order" under Wis. Stat. § 347.13(1) is correct. I write in dissent *705 to explain why the majority opinion's conclusion that "an officer's mistake of law is not sufficient grounds for a stop" is not correct.[1] See State v. Longcore, 226 Wis. 2d 1, 9, 593 N.W.2d 412 (Ct. App. 1999). I conclude that the legality of a stop depends on whether under the totality of the circumstances a reasonable officer could have believed that a law violation was occurring. See United States v. Martin, 411 F.3d 998, 1001 (8th Cir. 2005) (a search is valid when "an objectively reasonable police officer could have formed a reasonable suspicion that [a defendant] was committing a . .. violation"). Therefore, "in mistake cases [,] the question is simply whether the mistake, whether of law or of fact, was an objectively reasonable one." United States v. Smart, 393 F.3d 767, 770 (8th Cir. 2005). I further conclude that under the totality of the circumstances a reasonable officer could have believed that Brown's tail lamp violated § 347.13(1). Accordingly, I would reverse the decision of the court of appeals, and I respectfully dissent from the majority opinion.
I. BACKGROUND
¶ 83. On the evening of July 3, 2010, Milwaukee police officers Michael Wawrzonek and William Feely were patrolling an area near Capitol Drive as part of an effort to "saturate areas that are targeted" by armed robbers. Both officers testified that they observed a 1977 Buick Electra with one panel of the driver's side tail lamp, which had three panels, not illuminated. They pulled the vehicle over based on what they described as a "defective tail light."
¶ 84. After stopping the car, Officer Feely approached the vehicle and noticed Brown, who was sitting in the back seat, kick a small wooden object *706 under the passenger seat. He ordered all of the occupants out of the car, and ultimately recovered a .38 Taurus revolver from under the front seat.
¶ 85. The State charged Brown with felony possession of a firearm. Brown moved to suppress all evidence obtained from the stop because officers lacked probable cause to stop the car.
¶ 86. The circuit court denied the motion, finding that the officers' observation of the unlit panel justified the stop. In denying Brown's motion for post-conviction relief, the circuit court reiterated that stopping the car was proper because the officers "believed that the taillight was out." Even if it is "later to be shown that somehow that. . . light is supposed to not be on at that time," the circuit court reasoned that would not be "a fatal flaw in the stop itself."
¶ 87. The court of appeals reversed. It concluded that "[a] tail lamp with one of three light bulbs unlit does not violate Wis. Stat. § 347.13(1) when it otherwise meets the statutory definition of a tail lamp." State v. Brown, 2013 WI App 17, ¶ 21, 346 Wis. 2d 98, 827 N.W.2d 903. Because "[t]he officers mistakenly believed that the law required all of the tail lamps light bulbs to be lit; and 'a lawful stop cannot be predicated upon a mistake of law,'" it held that the evidence should have been suppressed. Id. (quoting Longcore, 226 Wis. 2d at 9).
¶ 88. We granted the State's petition for review, which asks us to decide whether the officers had probable cause or reasonable suspicion to stop Brown's car and whether the officers had reasonable suspicion to search Brown's car. We asked for additional briefing on the following issues:
(1) whether the officer had reasonable suspicion to stop Brown's vehicle because the officer believed that *707 Wis. Stat. § 347.13(1) was violated when not all the tail light bulbs on Brown's vehicle were working; [and]
(2) whether, assuming an officer makes a good faith mistake of law on which the officer makes a traffic stop ... that mistake of law nevertheless require [s] reviewing courts to conclude that the stop was not lawful.
II. DISCUSSION
A. Standard of Review
¶ 89. This case is about the legality of a traffic stop, which is constitutional if supported by probable cause or reasonable suspicion. State v. Anagnos, 2012 WI 64, ¶ 20, 341 Wis. 2d 576, 815 N.W.2d 675. We evaluate a stop according to two steps. "First, we review the circuit court's findings of historical fact under the clearly erroneous standard." Id. at ¶ 21. Next, "we review independently the application of those facts to constitutional principles." State v. Post, 2007 WI 60, ¶ 8, 301 Wis. 2d 1, 733 N.W.2d 634.
B. Lawfulness of Stop
1. Introduction
¶ 90. The majority opinion concludes that "an officer's mistake of law is not sufficient grounds for a stop."[2] See also Longcore, 226 Wis. 2d at 9. The majority opinion string-cites cases from other jurisdictions that have concluded that an officer's mistake of law cannot sustain a stop.[3] The majority opinion reasons that admitting evidence obtained based on a mistake of law *708 "would defeat the purpose of the exclusionary rule, for it would remove the incentive for police to make certain that they properly understand the law that they are entrusted to enforce and obey."[4] Because officers' understanding of Wis. Stat. § 347.13(1),[5] which is contrary to the majority opinion's interpretation herein, provided the sole basis for the stop in this case, it suppresses all evidence obtained from the stop.
¶ 91. I do not agree that an officer's mistake of law renders a search per se unreasonable. A statute may be ambiguous or unclear so that an objectively reasonable officer could form a reasonable belief that a violation was occurring, even when it was not. In that instance, I would uphold the search. While the majority opinion's circuit-counting shows that this may be a minority position, I nonetheless conclude that it is the conclusion the law requires for the reasons I now explain.
2. General Fourth Amendment principles
¶ 92. The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. "Temporary detention of indi *709 viduals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [that] provision." Whren v. United States, 517 U.S. 806, 809-10 (1996); see State v. Popke, 2009 WI 37, ¶ 11, 317 Wis. 2d 118, 765 N.W.2d 569. A traffic stop is reasonable, and therefore constitutional, if: (1) an officer has probable cause to believe a law violation has occurred; or (2) an officer has reasonable suspicion that a crime is about to be or has been committed. Whren, 517 U.S. at 810; Terry v. Ohio, 392 U.S. 1, 22 (1968). "Taken together, then, Terry and Whren stand for the proposition that a traffic stop will be deemed a reasonable 'seizure' when an objective review of the facts shows that an officer possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop." United States v. Delfin-Colina, 464 F.3d 392, 398 (3d Cir. 2006).
¶ 93. Evidence obtained in violation of the Fourth Amendment may be suppressed under the exclusionary rule. Weeks v. United States, 232 U.S. 383, 398 (1914); Hoyer v. State, 180 Wis. 407, 417, 193 N.W. 89 (1923). The exclusionary rule is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." United States v. Leon, 468 U.S. 897, 906 (1984) (quoting United States v. Calandra, 414 U.S. 338, 348 (1974)).[6] By preventing the use of illegally obtained evidence, it not only deters unconstitutional police conduct, but *710 also protects the integrity of the judicial process by refusing to sanction unlawful searches. State v. Knapp, 2005 WI 127, ¶ 79, 285 Wis. 2d 86, 700 N.W.2d 899.[7]
¶ 94. In some instances, "the substantial social costs of excluding relevant evidence" obtained illegally outweigh "the benefit of deterring future police misconduct" produced by the rule. State v. Eason, 2001 WI 98, ¶ 31, 245 Wis. 2d 206, 629 N.W.2d 625; accord Leon, 468 U.S. at 907-09. We therefore have recognized a good-faith exception to the exclusionary rule in some circumstances. Eason, 245 Wis. 2d 206, ¶ 28. We recently explained our approach to the exclusionary rule and its exceptions as follows:
To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.. .. [T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.
State v. Dearborn, 2010 WI 84 ¶ 36, 327 Wis. 2d 252, 786 N.W.2d 97 (quoting Herring v. United States, 555 U.S. 135, 144 (2009)).
¶ 95. For example, when an officer reasonably relies on a warrant issued by an independent magistrate, but the warrant is later held to be invalid, evidence seized in reliance on that warrant may nonetheless be admissible. Eason, 245 Wis. 2d 206, ¶ 3; Leon, 468 U.S. at 922. In Eason, we explained that in such a situation, the exclusionary rule would not serve its purpose of deterring police misconduct because no misconduct occurred. Eason, 245 Wis. 2d 206, ¶ 55. Although it might later be discovered that an officer *711 had no legal basis for a search because the warrant on which the officer relied was defective, the officer nonetheless could have acted reasonably. Id. at ¶ 3. Because there is "no real benefit in regard to deterrence, the social cost of excluding relevant evidence . .. [is] the determining factor." Id. at ¶ 58.
¶ 96. Suppression is likewise not required when an officer relies in good faith on a substantive criminal statute that is later held unconstitutional, Michigan v. DeFillippo, 443 U.S. 31, 39-40 (1979), or "when the officer reasonably relies on clear and settled precedent," Dearborn, 327 Wis. 2d 252, ¶ 46. See also Davis v. United States, _ U.S. _, 131 S. Ct. 2419, 2423-24 (2011). There again, because the officer is acting reasonably, "the exclusionary rule would have absolutely no deterrent effect on officer misconduct, while at the same time coming with the cost of allowing evidence of wrongdoing to be excluded." Dearborn, 327 Wis. 2d 252, ¶ 44.
¶ 97. And finally, when the basis for a traffic stop is reasonable suspicion that criminal activity is afoot, the fruits of the stop may be used against a defendant when the officer's belief is reasonable, even if he is wrong and the defendant did not actually commit an offense. United States v. Thomas, 93 F.3d 479, 485 (8th Cir. 1996). "The touchstone of the Fourth Amendment is reasonableness" because only unreasonable seizures are prohibited. United States v. Knights, 534 U.S. 112, 118-19 (2001). Therefore, an officer's conduct is examined to determine whether it was reasonable.
3. Mistakes of fact and law
¶ 98. Other jurisdictions allow the use of evidence obtained from a stop based on a mistake of fact.[8] In *712 other words, "an officer need not be factually accurate in her belief that a traffic law had been violated but, instead, need only produce facts establishing that she reasonably believed that a violation had taken place." Delfin-Colina, 464 F.3d at 398. This is so "because of the intensely fact-sensitive nature of reasonable suspicion and probable cause determinations." United States v. Chanthasouxat, 342 F.3d 1271, 1276 (11th Cir. 2003). When an officer is mistaken as to whether observed conduct is a violation, the law is less settled.
¶ 99. The majority opinion string-cites cases that have not allowed an officer's mistake of law to serve as the basis for a stop.[9] The majority opinion asserts that "[a]n officer cannot have a reasonable belief that a violation of the law occurred when the acts to which an officer points as supporting probable cause are not prohibited by law." United States v. McDonald, 453 F.3d 958, 961 (7th Cir. 2006). Under that view, "[i]t makes no difference that an officer holds an understandable or 'good faith' belief that a law has been broken." Id. at 961-62. Other jurisdictions adopt a somewhat softer approach under which " '[s]tops premised on a mistake of law . . . are generally held to be unconstitutional’. .. [but] [a] stop is lawful despite a mistake of law ... if an objectively valid basis for the stop nonetheless exists." United States v. Booker, 496 F.3d 717, 722 (D.C. Cir. 2007) (quoting United States v. Coplin, 463 F.3d 96, 101 *713 (1st Cir. 2006));[10] see Delfin-Colina, 464 F.3d at 399 ("In situations where an objective review of the record evidence establishes reasonable grounds to conclude that the stopped individual has in fact violated the traffic-code provision cited by the officer, the stop is constitutional even if the officer is mistaken about the scope of activities actually proscribed by the cited traffic-code provision."). The majority does not discuss the reasoning of contrary authority that I conclude is persuasive.
¶ 100. In some jurisdictions, "the validity of a stop depends on whether the officer's actions were objectively reasonable in the circumstances, and in mistake cases the question is simply whether the mistake, whether of law or of fact, was an objectively reasonable one." Smart, 393 F.3d at 770.[11] That is, there is "no *714 constitutional requirement to distinguish between mistakes of fact and mistakes of law" and an officer's mistake of law is not per se unreasonable. State v. Heien, 737 S.E.2d 351, 358 (N.C. 2012); see also United States v. Southerland, 486 F.3d 1355, 1359 (D.C. Cir. 2007) (concluding a stop was lawful, even assuming the officers were mistaken about what the law required, because their interpretation of the law was objectively reasonable under the circumstances).
¶ 101. One reason for concluding that a stop can be reasonable notwithstanding a mistake of law is that determinations about the validity of traffic stops are not "to be made with the vision of hindsight, but instead by looking to what the officer reasonably knew at the time." United States v. Sanders, 196 F.3d 910, 913 (8th Cir. 1999). Because courts "should not expect state highway patrolmen to interpret the traffic laws with the subtlety and expertise of a criminal defense attorney," it is possible that an officer could form a reasonable, yet mistaken, understanding of the law. Id. In those situations, "[a] post hoc judicial interpretation of a substantive traffic law does not determine the reasonableness of a previous traffic stop within the meaning of the state and federal constitutions." Heien, 737 S.E.2d at 357.
¶ 102. I conclude that a traffic stop is valid when an officer reasonably believes that a law has been or is about to broken, notwithstanding "a later legal deter *715 mination that the defendant's actions were not a crime according to a technical legal definition or distinction." McConnell v. State, 374 S.E.2d 111, 113 (Ga. Ct. App. 1988). As the Eighth Circuit explained, "neither mistake of law nor mistake of fact renders a traffic stop illegal so long as the officer's actions were objectively reasonable in the circumstances." United States v. Bueno, 443 F.3d 1017, 1024 (8th Cir. 2006). Accordingly, when a statute is either ambiguous or unclear so that an objectively reasonable officer could have believed that a violation was occurring, and that belief turns out to be incorrect, I would uphold the search.
¶ 103. This approach is consistent with the cornerstone of our Fourth Amendment jurisprudence: law enforcement must act reasonably. Reasonable suspicion does not involve a technical analysis. As with probable cause, it invokes "the factual and practical considerations of everyday life on which reasonable and prudent [persons], not legal technicians, act." See Brinegar v. United States, 338 U.S. 160, 175 (1949). While it is true that, as a matter of policy, courts should not destroy incentives for officers to "properly understand the law," I nevertheless conclude that an officer can make an objectively reasonable mistake of law. This is particularly true where, as here, members of this court reasonably interpreted Wis. Stat. § 347.13(1) and came to contradicting constructions[12] and the law at issue is a traffic code provision that has not been previously interpreted in a published decision.[13]
*716 ¶ 104. There are several arguments against this approach that merit discussion. First, some courts say that "[t]o create an exception here would defeat the purpose of the exclusionary rule, for it would remove the incentive for police to make certain that they properly understand the law that they are entrusted to enforce and obey." McDonald, 453 F.3d at 962 (quoting United States v. Lopez-Soto, 205 F.3d 1101, 1106 (9th Cir. 2000)). Additionally, "if officers are allowed to stop vehicles based upon their subjective belief that traffic laws have been violated even where no such violation has, in fact, occurred, the potential for abuse of traffic infractions as pretext for effecting stops [could] seem[] boundless and the costs to privacy rights excessive." United States v. Lopez-Valdez, 178 F.3d 282, 289 (5th Cir. 1999). And finally, the rule excluding evidence from stops based on mistakes of law aligns with the principle that courts should not use a statute's ambiguity or vagueness against a defendant. Chanthasouxat, 342 F.3d at 1278-79.
¶ 105. Criticism about the incentives this "boundless" rule would create are grounded in a misunderstanding of the proper inquiry. The question is not whether a particular officer made a mistake of law. Rather, it is whether, under a totality of the circumstances an objectively reasonable officer could have understood the law in such a way. The stopping point is reasonableness. Because a mistake of law must be reasonable, this approach does not invite abuse.
¶ 106. As to the fact that sustaining a search premised on a mistake of law has the effect of using an ambiguity against a defendant, I agree with the following assessment of the North Carolina Supreme Court:
[T]he reasonable suspicion standard does not require an officer actually to witness a violation of the law *717 before making a stop. That rule generally applies regardless of the particular substantive law at issue, and results in part because Terry stops are conducted not only to investigate past crime but also to halt potentially ongoing crime, to thwart contemplated future crime, and, most importantly in these circumstances, to protect the public from potentially dangerous activity.
Heien, 737 S.E.2d at 356-57 (citations omitted). I likewise conclude that "because we [should be] concerned for maintaining safe roadways, we [should] not want to discourage our police officers from conducting stops for perceived traffic violations." Id. at 357.
¶ 107. I therefore conclude that when an officer's mistake of law is reasonable, the costs of excluding evidence are not outweighed by the benefit of deterrence. See Eason, 245 Wis. 2d 206, ¶ 31. A reasonable mistake of law is, by definition, not the kind of police misconduct the exclusionary rule aims to deter. It is not the result of deliberate misconduct, recklessness, or grossly negligent performance of duty. See Dearborn, 327 Wis. 2d 252, ¶ 36. It is an objectively reasonable interpretation that a later legal determination declares incorrect. In those situations, I see no reason to distinguish between mistakes of law and fact, and would uphold a traffic stop if under the totality of the circumstances the officer's interpretation of the law is objectively reasonable.
4. Application
¶ 108. I conclude that the officers acted reasonably notwithstanding the majority opinion's determination that Wis. Stat. § 347.13(1) does not require every panel in a tail lamp to be lit. Section 347.13(1) requires a tail lamp to be in "good working order." Although I *718 assume, arguendo, that a tail lamp is in good working order when it is visible from 500 feet, a reasonable officer could have believed otherwise. In other words, at the time of the stop, "good working order" was ambiguous and the officers acted reasonably. See Teschendorf v. State Farm Ins. Cos., 2006 WI 89, ¶ 20, 293 Wis. 2d 123, 717 N.W.2d 258 ("[a] statute that is unambiguous in one context may be ambiguous in another").
¶ 109. To explain further, a tail lamp is "a device to designate the rear of a vehicle by a warning light." Wis. Stat. § 340.01(66). The individual panels of a tail lamp generally function together as a unitary device. The majority opinion concludes that the device is functional when the light it emits can be viewed from a distance of 500 feet.[14] It takes no great leap of logic to conclude that an unlit panel might impair the function of the lamp. As Justice Prosser explains, "it is hard to imagine that a tail lamp or a stop lamp that has defective lights can be described as being 'in proper working condition.' "[15] Put differently, a reasonable officer could have suspected that the unlit panel in Brown's tail lamp violated Wis. Stat. § 347.13(1) because an unlit panel could render the tail lamp less visible, or even invisible, from a distance of 500 feet.[16]
¶ 110. I also note that the court of appeals has previously interpreted Wis. Stat. § 347.13(1) differently than the majority opinion does today. In State v. Olson, No. 2010AP149-CR, unpublished slip op. (Wis. Ct. App. Aug. 5, 2010), an officer observed "a slow moving *719 vehicle equipped with four tail lamp bulbs, one of which was burnt out" and stopped the vehicle. Id. at ¶ 2. The court of appeals upheld the stop, concluding that "[a] tail lamp with a burnt out bulb cannot be said to be 'in good working order.'" Id. at ¶ 12. "Though not dispositive, the fact that [courts] reached contradictory interpretations, despite both courts concluding that the statute was clear, is indicative of ambiguity." Teschendorf, 293 Wis. 2d 123, ¶ 19.
¶ 111. The Mississippi Supreme Court upheld a stop based on a similar mistake of law to the one in the present case. In Moore v. State, 986 So. 2d 928 (Miss. 2008), an officer stopped a vehicle for having only one working tail lamp. Id. at 929. There, the court upheld the search even though it was "clear [to the court of appeals] that what the police observed did not constitute a violation of the cited traffic law." Id. at 931 (citation omitted). The officers' mistake in the present case is equally reasonable.
¶ 112. The majority cites to two cases in support of its conclusion that the officers acted unreasonably because the tail lamp was functional and therefore in good working order: Kroft v. State, 992 N.E.2d 818 (Ind. Ct. App. 2013) and Vicknair v. State, 751 S.W.2d 180 (Tex. Crim. App. 1986).[17] In Kroft, an officer stopped a vehicle with a dime-sized hole in the plastic cover of a tail lamp. Kroft, 992 N.E.2d at 820. Rejecting the State's argument that the tail lamp was not in good working order, the court concluded that "there [wa]s simply no evidence [the vehicle] posed any danger to motorists approaching [the vehicle] from behind" and the officer "did not testify that he had trouble spotting [the vehicle] from behind." Id. at 822. Vicknair involved *720 a similar defect, a cracked tail lamp. Vicknair, 751 S.W.2d at 187. There, the court concluded that the device was in good working order because it was still visible from the requisite distance. Id. at 189-90.
¶ 113. These cases are easily distinguished. Unlike in Kroft and Vicknair, the defect in the present case implicates the function of a tail lamp, which the defects in Kroft and Vicknair did not. Here, the totality of the circumstances on July 3, 2010, could have led a reasonable officer to suspect that Brown's vehicle violated the law because a panel in the tail lamp was not functioning.
III. CONCLUSION
¶ 114. For purposes of this dissent, I assume, arguendo, that the majority opinion's conclusion that Brown's tail lamp was in "good working order" under Wis. Stat. § 347.13(1) is correct. I write in dissent to explain why the majority opinion's conclusion that "an officer's mistake of law is not sufficient grounds for a stop" is not correct.[18] See Longcore, 226 Wis. 2d at 9. I conclude that the legality of a stop depends on whether under the totality of the circumstances a reasonable officer could have believed that a law violation was occurring. See Martin, 411 F.3d at 1001 (a search is valid when "an objectively reasonable police officer could have formed a reasonable suspicion that [a defendant] was committing a. . . violation"). Therefore, "in mistake cases[,] the question is simply whether the mistake, whether of law or of fact, was an objectively reasonable one." Smart, 393 F.3d at 770. I further conclude that under the totality of the circumstances a reasonable officer could have believed that Brown's tail lamp violated § 347.13(1).
*721 ¶ 115. Accordingly, I would reverse the decision of the court of appeals, and I respectfully dissent from the majority opinion.
¶ 116. I am authorized to state that Justice ANNETTE KINGSLAND ZIEGLER joins this dissent.

 Majority op., ¶ 25.

 Id., ¶ 25.

 Id.

 Id., ¶ 24 (quoting United States v. McDonald, 453 F.3d 958, 962 (7th Cir. 2006)) (further citation omitted).

 Wisconsin Stat. § 347.13(1) provides in relevant part as follows:
No person shall operate a motor vehicle . . . during hours of darkness unless such motor vehicle ... is equipped with at least one tail lamp mounted on the rear which, when lighted during hours of darkness, emits a red light plainly visible from a distance of 500 feet to the rear. No tail lamp shall have any type of decorative covering that restricts the amount of light emitted when the tail lamp is in use. No vehicle originally equipped at the time of manufacture and sale with 2 tail lamps shall be operated upon a highway during hours of darkness unless both such lamps are in good working order.

 See also Conrad v. State, 63 Wis. 2d 616, 636, 218 N.W.2d 252 (1974) ("The exclusionary rule is a judge-made one in furtherance of conduct that courts have considered to be in the public interest and to suppress conduct that is not.").

 But see id. at 635 (questioning the effectiveness of the exclusionary rule to accomplish its objectives.)

 E.g., United States v. Delfin-Colina, 464 F.3d 392, 398 (3d Cir. 2006) ("mistakes of fact are rarely fatal to an officer's *712 reasonable, articulable belief that an individual was violating a traffic ordinance at the time of a stop"); United States v. Chanthasouxat, 342 F.3d 1271, 1276 (11th Cir. 2003) ("A traffic stopped based on an officer's incorrect but reasonable assessment of facts does not violate the Fourth Amendment."); United States v. Cashman, 216 F.3d 582, 587 (7th Cir. 2000) ("the Fourth Amendment requires only a reasonable assessment of the facts, not a perfectly accurate one").

 Majority op., ¶ 25.

 The United States Supreme Court vacated the judgment in Booker and remanded to the district court for further consideration in light of Arizona v. Gant, 556 U.S. 332 (2009). Booker v. United States, 556 U.S. 1218 (2009). The D.C. Circuit's holding regarding stops based on mistakes of law, however, remains good law. See United States v. Williams, 878 F. Supp. 2d 190, 200 n.4 (D.D.C. 2012). Prior decisions of the D.C. Circuit on the same point also remain intact. United States v. Southerland, 486 F.3d 1355, 1359 (D.C. Cir. 2007) (stop was lawful "even assuming [officers] were mistaken that the law required display of the front plate on the bumper"); United States v. Bookhardt, 277 F.3d 558, 565 n.9 (D.C. Cir. 2002) (where an independent valid ground for an arrest exists, there is no reason to distinguish between arrests "where the crime charged was not actually a crime" and arrests "in which the charged offense was a crime but the officer lacked probable cause to believe it had been committed").

 See also Harrison v. State, 800 So. 2d 1134, 1139 (Miss. 2001) ("deputies had probable cause to stop Harrison, even though it was based on a mistake of law"); DeChene v. Smallwood, 311 S.E.2d 749, 751 (Va. 1984) ("an arrest resulting from *714 a mistake of law should be judged by the same test as one stemming from a mistake of fact"); McConnell v. State, 374 S.E.2d 111, 113 (Ga. Ct. App. 1988) ("If the officer acting in good faith believes that an unlawful act has been committed, his actions are not rendered improper by a later legal determination that the defendant's actions were not a crime according to a technical legal definition or distinction determined to exist in the penal statute.").

 See Prosser, J., dissenting, ¶ 73.

 In an unpublished decision, the court of appeals held that "[a] tail lamp with a burnt out bulb cannot be said to be 'in good working order.'" State v. Olson, No. 2010AP149-CR, unpublished slip op., ¶ 12 (Wis. Ct. App. Aug. 5, 2010).

 Majority op., ¶ 33.

 Prosser, J., dissenting, ¶ 73.

 Moreover, the record does not indicate whether the tail lamp was visible from a distance of 500 feet. It is possible then, given the record before us, that the tail lamp violated Wis. Stat. § 347.13(1).

 Majority op., ¶ 32.

 Id., ¶ 25.