# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**CRAIG A. DECHERT**
Howard County Deputy Public Defender
Kokomo, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**LARRY D. ALLEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KOLYANN WILLIAMS, | ) | |
| | ) | |
| Appellant/Defendant, | ) | |
| | ) | |
| vs. | ) | No. 34A02-1406-CR-418 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee/Plaintiff. | ) | |

APPEAL FROM THE HOWARD SUPERIOR COURT
The Honorable William C. Menges, Jr., Judge
Cause No. 34D01-1402-CM-101

**December 9, 2014**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

## CASE SUMMARY

Appellant/Defendant Kolyann Williams was pulled over by Kokomo Police Officer Jeff Packard when Officer Packard noticed that one of the tail lamps on Williams's vehicle had a hole and was emitting white light. As Packard approached the vehicle, he detected the odor of marijuana. After a police canine alerted to the presence of drugs in Williams's vehicle, Officer Packard retrieved a bag containing marijuana from Williams's person. Appellee/Plaintiff the State of Indiana ("the State") charged Williams with Class A misdemeanor marijuana possession, and the trial court found him guilty as charged, sentenced him to 365 days of incarceration, and suspended 363 days to probation. Williams contends that the trial court erred in denying his motion to suppress because Officer Packard's stop was illegal. Because we conclude that Officer Packard did not have reasonable suspicion to believe that Williams had committed an infraction, we reverse the judgment of the trial court.

## FACTS AND PROCEDURAL HISTORY

While patrolling during the midnight shift of February 15, 2014, Officer Packard noticed a 1988 black Oldsmobile Cutlass in front of him and "observed that the passenger side taillight had a large hole in it that was allowing a significant amount of while light to emit out of it while it was in forward motion." Tr. p. 6. According to Officer Packard, the hole was the size of approximately forty to fifty percent of the entire tail lamp with a "miniscule" amount of red light emitting from around the outer rim. Officer Packard observed Williams's vehicle from approximately 300 to 700 feet away, and described the "unfiltered" white light as "overwhelming" the "filtered red light whose source was the

2

same bulb." Tr. pp. 11-12. Officer Packard believed that any white light emitting from the rear of a vehicle in forward motion was a traffic infraction.

Officer Packard initiated a traffic stop and detected the faint odor of marijuana coming from inside. Officer Packard called for backup, and another officer brought a canine, which canine indicated the presence of drugs in Williams's vehicle. Williams admitted that he had a "smoke bag" in his pocket, and Officer Packard found a plastic baggie of marijuana on Williams's person. Tr. p. 26.

On February 18, 2014, the State charged Williams with Class A misdemeanor marijuana possession. On May 22, 2014, Williams's bench trial began. During Officer Packard's testimony, the trial court held a hearing on Williams's motion to suppress evidence. The trial court denied Williams's motion to suppress, ruling that because the light Officer Packard saw was "primarily white, not red[,] it would appear from his perspective that the vehicle did not comply with [Indiana Code section] 9-19-6-4." Tr. p. 25. Trial resumed, and after its conclusion, the trial court found Williams guilty as charged. The trial court sentenced Williams to 365 days of incarceration, with 363 suspended to probation.

## DISCUSSION AND DECISION

Although Williams frames the issue as a challenge to the denial of his motion to suppress evidence, he actually appeals from the allegedly erroneous admission of evidence at trial. *Curley v. State*, 777 N.E.2d 58, 60 (Ind. Ct. App. 2002). We will only reverse a trial court's decision on the admissibility of evidence upon a showing of an abuse of that discretion. *Id*. An abuse of discretion may occur if the trial court's decision

3

is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id.* The Court of Appeals may affirm the trial court's ruling if it is sustainable on any legal basis in the record, even though it was not the reason enunciated by the trial court. *Moore v. State*, 839 N.E.2d 178, 182 (Ind. Ct. App. 2005). We do not reweigh the evidence and consider the evidence most favorable to the trial court's ruling. *Hirsey v. State*, 852 N.E.2d 1008, 1012 (Ind. Ct. App. 2006).

Williams argues that all evidence collected as a result of Officer Packard's traffic stop must be suppressed because the stop was illegal. The State argues that Officer Packard had reasonable suspicion to stop Williams for violation of an infraction.

> "'It is well-settled that a police officer may briefly detain a person whom the officer believes has committed an infraction or an ordinance violation.'" *Datzek v. State*, 838 N.E.2d 1149, 1154 (Ind. Ct. App. 2005), *trans. denied* (quoting *Peete v. State*, 678 N.E.2d 415, 419 (Ind. Ct. App. 1997), *trans. denied*). The determination of reasonable suspicion and probable cause requires de novo review on appeal. *See Myers v. State*, 839 N.E.2d 1146, 1150 (Ind. 2005).
>
> ….
>
> The general rule of statutory construction is that
>
>> [p]enal statutes should be construed strictly against the State and ambiguities should be resolved in favor of the accused. At the same time, however, statutes should not be narrowed so much as to exclude cases they would fairly cover. Also, we assume that the language in a statute was used intentionally and that every word should be given effect and meaning. We seek to give a statute practical application by construing it in a way favoring public convenience and avoiding absurdity, hardship, and injustice. And statutes concerning the same subject matter must be read together to harmonize and give effect to each.
>
> *Merritt v. State*, 829 N.E.2d 472, 475 (Ind. 2005).

*Goens v. State*, 943 N.E.2d 829, 832 (Ind. Ct. App. 2011).

Indiana Code section 9-19-6-4 provides, in part, that "a motor vehicle … that is

4

registered in Indiana and manufactured or assembled after January 1, 1956, must be equipped with at least two (2) tail lamps mounted on the rear that, when lighted, … emit[] a red light plainly visible from a distance of five hundred (500) feet to the rear."[1] Violation of Indiana Code section 9-19-6-4 is a Class C infraction. Ind. Code § 9-19-6-24(b). As we noted in *Kroft v. State*, 992 N.E.2d 818, 821 (Ind. Ct. App. 2013), "[t]here is no requirement about 'only' red light being visible from a distance of 500 feet." The question, then, is whether the evidence establishes that Williams's vehicle did not have at least two tail lamps mounted on the rear that emitted red light plainly visible from 500 feet to the rear.

Our review of the record lead us to conclude that the evidence does not establish a violation of Indiana Code section 9-19-6-4. While Officer Packard did testify that the white light emanating from the tail lamp was "significant" and overwhelmed the red, Tr. p. 6, he never testified that the red light was not plainly visible. The plain language of section 9-19-6-4 does not only *not* prohibit colors of light other than red, is does not even prohibit those other colors from being the *predominant* color. So long as *some* red light is plainly visible at a distance of 500 feet from at least two tail lamps, there is no violation of section 9-16-6-4. In any event, the record does not establish that Officer Packard ever observed Williams's vehicle from the required 500 foot distance, as his testimony was only that observed the vehicle from a distance of anywhere from 300 to 700 feet. As Officer Packard admitted, "I don't know the exact distance." Tr. p. 11.

---

[1] Three portions of Indiana Code section 9-16-6-4 are separated by ellipses in this quotation. The first two portions appear sequentially in subsection (b) of while the third section appears in subsection (a).

The State argues that even if the condition of Williams's tail lamps did not amount to an infraction, Officer Packard still, in good faith, had reasonable suspicion to believe that it did. "Although a law enforcement officer's good faith belief that a person has committed a violation will justify a traffic stop…, an officer's mistaken belief about what constitutes a violation does not amount to good faith." *Ransom v. State*, 741 N.E.2d 419, 422 (Ind. Ct. App. 2000). Officer Packard testified that he believed it to be an infraction that the white light emanating from the tail lamp overwhelmed the red. As discussed above, pursuant to Indiana Code section 9-16-6-4 as written, this, quite simply, is not an infraction. Consequently, Officer Packard held a mistaken belief, rather than good-faith reasonable suspicion, that an infraction had occurred.

The State relies on the Indiana Supreme Court's decision in *Sanders v. State*, 989 N.E.2d 332 (Ind. 2013). At issue in that case was the Indiana Window Tint Statute, which

> prohibits operation of a motor vehicle that has windows tinted in such a way that "the occupants of the vehicle cannot be easily identified or recognized through [those] window[s] from outside the vehicle." Ind. Code § 9-19-19-4(c). It is an affirmative defense if the solar reflectance of visible light is not more than 25% and the light transmittance is at least 30%. *Id*.

*Sanders*, 989 N.E.2d at 335. A police officer pulled over the defendant based on his perception that the tint of the vehicle in question was sufficiently dark that he could not clearly recognize or identify the occupant, although it was later determined that the windows had a light transmittance of 38%, within the legal range. *Id*. While the *Sanders* court recognized that the defendant was relieved of any liability under the Window Tint

6

Statute by the light transmittance of the window, "it [did] not serve to vitiate the legality of the traffic stop." *Id.* The fact that the officer could not recognize the occupants of the vehicle, coupled with the fact that the actual tint closely bordered the statutory limit, led the Court to conclude that the officer had reasonable suspicion that an infraction had occurred. *Id.*

*Sanders*, however, is distinguishable. In *Sanders*, the officer's observations established a *prima facie* case that the infraction occurred, *i.e.*, he could not clearly recognize or identify the occupants of the vehicle. The fact that the defendant was later able to establish an affirmative defense had no retroactive effect on the existence of reasonable suspicion. In contrast and as discussed, Officer Packard's observations did not make out a *prima facie* case that an infraction occurred, regardless of his mistaken belief that they did. Moreover, the actual amount of red light in this case did not closely border any applicable legal limit. Pursuant to Indiana Code section 9-19-6-4, at least when it comes to the presence of red light, there is no limit to closely border—either the red light is plainly visible or it is not, and Officer Packard never testified that it was not.[2] The State's reliance on *Sanders* is unavailing. Because we conclude that all of the evidence supporting Williams's conviction was gathered as a result of an illegal stop, we reverse Williams's conviction for Class A misdemeanor marijuana possession with no possibility for retrial.

---

[2] This is not to say that an officer could never have a good-faith, but incorrect, belief that an infraction had occurred under Indiana Code section 9-19-6-4. Let us suppose that an officer testifies that he could not plainly see red light emanating from a tail lamp at a distance of what he believed to be 500 feet. The distance, however, was actually only 490 feet. Although under these facts there has been no infraction, there might well be a good-faith belief that one occurred, as 490 feet "closely borders" the statutory distance of 500 feet.

7

We reverse the judgment of the trial court.

NAJAM, J., and MATHIAS, J., concur.