**Affirmed and Opinion Filed February 3, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01496-CR

### DEBORAH AILEEN JOHNSON, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the County Court at Law No. 5**
**Collin County, Texas**
**Trial Court Cause No. 005-84064-2012**

## MEMORANDUM OPINION
Before Justices Bridges, Lang, and Evans
Opinion by Justice Lang

Deborah Aileen Johnson was charged with driving while intoxicated following a traffic stop for a broken tail lamp that emitted a white, rather than red, light. She filed a motion to suppress evidence, asserting the stop was illegal and violated her constitutional and statutory rights. After the trial court denied her motion, she pleaded guilty and was assessed a 180-day sentence, suspended for twenty months, and a $500 fine. In a single issue, Johnson asserts the trial court reversibly erred in denying her motion to suppress. We decide against Johnson on her issue and affirm.

### I. BACKGROUND

Johnson was stopped pursuant to Texas Transportation Code section 547.322 which requires, in relevant part, that a car's tail lamp "emit a red light plainly visible at a distance of

1,000 feet from the rear of the vehicle." *See* TEX. TRANSP. CODE ANN. § 547.322 (West 2011). At the hearing on the motion to suppress, Princeton police officer Frankie Pell, Jr. testified he was on the side of the road when Johnson drove by him. He noticed Johnson's car had a "busted" tail lamp that was "displaying" a white light instead of a red light and "was just damaged to the point that it was not in compliance with the law." Pell's in-car camera was activated and recorded Johnson as she drove by Pell and continued driving. The recording, which was admitted into evidence, reflects Johnson's left tail lamp was broken and was emitting a white light. When asked on cross-examination whether "there's still red light in the tail light," Pell responded, "[i]t's possible." However, Pell had no "independent recollection" of how much red light "was being emitted."

Johnson's sister, Patricia Shaw, testified she was responsible for driving Johnson's car home after Johnson was arrested. Shaw went to pick up Johnson's car with her former mother-in-law, Jane Cox, who also testified as to the damage to the tail lamp. Cox observed the damage as she followed Shaw back home. According to Cox, both of Johnson's tail lights emitted a red light at the time.

Johnson's investigator, Billy Meeks, testified he was asked to "remove[] a portion of the [left] tail light" from Johnson's car "similar to the damage that was done to the vehicle prior to [him] ever seeing the vehicle." He began by taking a picture of the tail lamp "fully assembled and [without] the damage that was created." Then, he reconstructed the broken tail lamp based on what Shaw "remembered the damage[] being" on the night Johnson was stopped. Meeks testified he took pictures of Johnson's car with the reconstructed broken lamp from "20 feet out to from 1,000 feet to show the display of the lights as they were with the damage that was described." He then broke the lamp a second time, creating "a greater amount of damage than what [was] originally identified." Pictures of this damage were also taken. The pictures were

admitted into evidence, and according to Meeks, in both instances, the tail lamp still displayed a red light.[1] Pell agreed that a picture of the tail lamp reconstructed by Meeks reflected the damage to Johnson's tail lamp when she was stopped.

Relying on *Vicknair v. State*, 751 S.W.2d 180 (Tex. Crim. App. 1986), and *Gaines v. State*, No. 04-00-00050-CR, 2001 WL 99630 (Tex. App.—San Antonio Feb. 7, 2001, pet. ref'd), Johnson argued in closing to the trial court that, to be "defective under the law," the tail lamp had to be damaged to the point it emitted no red light. Because the witnesses testified Johnson's broken tail lamp emitted red, Johnson contended it was "not defective under the law," and all evidence obtained following the stop needed to be suppressed. In denying Johnson's motion, the trial court made the following relevant findings:

•Officer Pell testified the tail lamp glowed white, rather than red.

•Officer Pell activated his in-car video system when he first observed Defendant's broken tail lamp.

•The video system recorded Defendant's operation of her vehicle up to the stop and throughout the roadside investigation and arrest.

•The video recording clearly shows Defendant's tail lamp glowing white, rather than red.

•Officer Pell was a credible witness and his testimony is believable.

•Defense witnesses Billy Meeks, Patricia Shaw and Jane Cox were not credible witnesses. Their testimony pertained to hypothetical recreations of the broken tail lamp in question; the testimony did not deal directly with Defendant's tail lamp as it was observed by Officer Pell.

The trial court also made the following relevant conclusions:

•Officer Pell had reasonable suspicion, given the totality of the circumstances in light of his experience and training, that the Defendant was committing a traffic offense when he observed Defendant's broken tail lamp.

---

[1] Copies of these pictures are included in the exhibit file of the reporter's record. However, the copies are black and white.

•Defendant's broken tail lamp was a violation of the Texas Transportation Code §546.322(d).

•The Defendant's case is distinguished from *Vicknair v. State* and *Gaines v. State* because Defendant's tail lamp was not merely "fractured" as in those cases; rather, Defendant's tail lamp was completely "busted" according to Officer Pell's testimony and Defense's own witnesses.

•The actions of the Princeton Police Department did not violate the constitutional . . . rights of the Defendant under the Fourth . . . or Fourteenth Amendments to the United States Constitution, or Article 1, Section 9 of the Texas Constitution.[2]

## II. SUPPRESSION OF EVIDENCE

In arguing the trial court erred in denying her motion to suppress, Johnson challenges several of the trial court's findings, but concludes "[t]he trial court's decision in this case comes down to [the] factual finding [that] 'the video clearly shows Defendant's tail lamp glowing white, rather than red.'" Johnson asserts the quality of the video is poor and notes Pell "admitted [as] much," specifically testifying that "[a]fter I catch up to [Johnson's car] and I have all my lights and bright lights on for safety reasons, it's not as easy to see that one [tail lamp] is red and one's white as it is as she passes by as I'm parked on the side of the road." Johnson argues that, "[b]ecause an evaluation of video footage does not 'pivot on an evaluation of credibility and demeanor' - this Court may exercise its own independent judgment as to what weight should have been given to the video footage vis-à-vis [the] indisputable evidence" that the tail lamp emitted both a red and white light, Pell "adopted" the picture of the reconstructed broken tail lamp "as an accurate re-creation of the damage he personally observed," a "significant portion of red lens remain[ed]," and Pell was credible. Johnson asserts that, "reviewed in this appropriate fashion, the record fails to support the trial court's finding that the taillight did not exhibit a red

---

[2] Addressing additional allegations in Johnson's motion to suppress, the trial court also concluded the actions of the Princeton Police Department did not violate Johnson's rights under the Fifth and Sixth Amendments of the United States Constitution, Article 1, sections 10 and 19 of the Texas Constitution, or Article 38.23 of the Texas Code of Criminal Procedure. Johnson does not complain of these rulings in this Court.

light at 1000 feet and the conclusion that Pell's actions did not violate her constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution.[3]

### A. Applicable Law

The purpose of the Fourth Amendment to the United States Constitution is to "safeguard an individual's legitimate expectation of privacy from unreasonable governmental intrusions." *See Richardson v. State*, 865 S.W.2d 944, 948 (Tex. Crim. App. 1993); *see also Berger v. New York*, 388 U.S. 41, 53 (1967). The Fourth Amendment, applicable to the states by the Due Process Clause of the Fourteenth Amendment, does not forbid all searches and seizures, however, just unreasonable ones. *United States v. Sharpe*, 470 U.S. 675, 682 (1985); *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). For Fourth Amendment purposes, a traffic stop is a seizure and must be reasonable to be lawful. *See Vasquez v. State*, 324 S.W.3d 912, 919 (Tex. App.—2010, pet. ref'd); *see also Delaware v. Prouse*, 440 U.S. 648, 653-54 (1979). The State bears the burden of demonstrating the reasonableness of the traffic stop. *See Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). A traffic stop is lawful if the law enforcement officer has a reasonable basis for suspecting the driver has committed a traffic violation. *See Arizona v. Johnson*, 555 U.S. 323, 327 (2009); *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992).

It is a misdemeanor offense in Texas to operate a vehicle not equipped with tail lamps which emit red light plainly visible at a distance of 1,000 feet from the rear of the vehicle. *See* TEX. TRANSP. CODE ANN. §§ 547.004, 547.322. No traffic violation occurs, however, if a fracture in a tail light allows white light to emit so long as the tail light continues to emit a red light for 1,000 feet. *See Vicknair*, 751 S.W.2d at 189.

---

[3] Johnson also relies on article 1, section 9 of the Texas Constitution. However, she does not argue the Texas Constitution provides greater protection than the United States Constitution. Accordingly, we limit our analysis to the United States Constitution. *See Johnson v. State*, 853 S.W.2d 527, 533 (Tex. Crim. App. 1992).

*B. Standard of Review*

An appellate court reviews a trial court's ruling on a motion to suppress under a bifurcated standard. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). First, the appellate court affords almost complete deference to the trial court's determination of historical facts, because the trial court, as the sole judge of the credibility of the witnesses and weight to give their testimony, is free to believe all or part of the testimony. *Id.* Second, the appellate court reviews the trial court's application of the law of search and seizure to the facts de novo. *Id.* The trial court's ruling will be upheld if it is "reasonably supported by the record and correct under any theory of law applicable to the case." *Id.* at 447-48 (quoting *State v. Dixon*, 206 S.W.3d. 587, 590 (Tex. Crim. App. 2006)). When, as here, the trial court makes explicit findings of fact, the appellate court reviews the evidence in the light most favorable to the trial court's ruling to determine whether the evidence supports those factual findings. *Id.*

*C. Application of Law to Facts*

Although Johnson contends the poor quality of the video recording renders it unreliable in light of Pell's testimony that the tail lamp emitted both a red and white light and was only partially damaged with a "significant portion of red lens remaining," we conclude the recording is of sufficient quality to support the trial court's finding that the "recording clearly shows Defendant's tail lamp glowing white, rather than red." The recording, though grainy, reflects the white light of headlights of oncoming traffic, the green light of a traffic signal, the yellow and white lane markers on the road, and the red light of Johnson's intact right tail lamp. Moreover, although Johnson relies on portions of Pell's testimony seemingly suggesting the tail lamp might not have been damaged "to the point that it was not in compliance with the law," in reviewing the evidence adduced at the suppression hearing, we view the evidence in the light most favorable to the trial court's ruling. *Id.* That evidence included, in addition to the video

–6–

recording, Pell's testimony that Johnson's car had a "busted" tail lamp that "display[ed]" a white light rather than a red light. As Johnson acknowledges, the trial court found Pell to be a credible witness. As such, we defer to the trial court's finding that "Pell testified the tail lamp glowed white rather than red." *See id.*

On the record before us, we conclude the trial court's findings are supported by the evidence. Because it is a misdemeanor offense to operate a car with tail lamps that fail to emit a red light at a distance of 1,000 feet from the rear of the car, we further conclude the trial court properly determined Pell had a reasonable suspicion that Johnson had committed a traffic violation and Pell's actions did not violate Johnsons' rights under the Fourth and Fourteenth amendments. We decide Johnson's sole issue against her.

### III. CONCLUSION

Having decided Johnson's sole issue against her, we affirm the trial court's judgment.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

131496F.U05

–7–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DEBORAH AILEEN JOHNSON, Appellant

No. 05-13-01496-CR       V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 5, Collin County, Texas
Trial Court Cause No. 005-84064-2012.
Opinion delivered by Justice Lang. Justices Bridges and Evans participating.

Based on the Court's opinion of this date, we **AFFIRM** the trial court's judgment.

Judgment entered this 3rd day of February, 2015.