**Opinion filed May 9, 2019**



In The

# Eleventh Court of Appeals

_____

## No. 11-17-00134-CR

_____

## ERIC JAMES FREEMAN, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 104th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 20115B**

## M E M O R A N D U M   O P I N I O N

The jury convicted Eric James Freeman of the second-degree felony offense of possession of methamphetamine and, upon Appellant's plea of true to the enhancement allegation, assessed his punishment at confinement for ten years. The trial court sentenced Appellant in accordance with the jury's verdict. In two issues on appeal, Appellant asserts a sufficiency-of-the-evidence complaint and argues that the trial court abused its discretion when it denied his motion to suppress evidence. We affirm.

Before trial, Appellant filed a motion to suppress evidence—including, among other things, 1.45 grams of methamphetamine—obtained incident to the traffic stop. The trial court held a hearing on Appellant's motion to suppress.

At the hearing, Mary Guitar, an officer with the Abilene Police Department, testified for the State. The State also presented the dashcam video of the traffic stop.

Officer Guitar explained that, at roughly 2:25 a.m. on the day of the offense, she was sitting in her patrol vehicle at a red light at the intersection of Willis and South 1st in Abilene. Shortly thereafter, she saw Appellant drive through a green light at the intersection. When Appellant drove past her, Officer Guitar saw that one of the passenger side taillights of Appellant's vehicle was emitting a white light. Officer Guitar testified that, from where she was, the white light of that taillight overpowered the red light of that same taillight and that she could not see any of the red light from that taillight. She testified that the Texas Transportation Code provides that vehicles must be equipped with a red taillight that is visible at 1,000 feet. She believed that the taillight was broken because it did not have a complete lens cover.

After the light facing Officer Guitar changed to green, Officer Guitar turned at the intersection and activated her emergency lights. Appellant drove into a motel parking lot. Officer Guitar also drove into the parking lot, exited her vehicle, and approached Appellant's vehicle. She told Appellant that she stopped him because there was a "busted taillight" on his vehicle. At the hearing on the motion, Officer Guitar clarified the reason for the stop and testified that she actually initiated the traffic stop on the basis of how much "the white light [wa]s overpowering the red light of the lens." Appellant told Officer Guitar that he did not have a driver's license and that he did not have registration documents for his vehicle.

Officer Guitar asked Appellant to exit his vehicle. After Officer Guitar performed several field sobriety tests on Appellant, she arrested him for DWI.

2

During a subsequent search of the vehicle that Appellant was driving, Officer Guitar found methamphetamine. Ultimately, Officer Guitar did not cite Appellant for a defective taillight.

On cross-examination, Appellant's counsel asked Officer Guitar about the appearance of the taillights as seen in the dashcam video. The dashcam video contains the entire traffic stop. Appellant's counsel appeared to suggest that, based on certain portions of the video, the taillight that Officer Guitar perceived to be defective was functional because a red light was visible. Officer Guitar conceded that, at various points in the video, the taillight did appear to emit some red light. However, she explained that the taillight appeared to emit a white light "in person." She also said that the taillight, as shown in the video, appeared a "brighter" red than the other taillights.

Appellant's counsel also insisted, based on certain portions of the dashcam video, that the taillights all appeared to have red lenses. Officer Guitar agreed, based on the portions of the video that she was shown, that they "all look[ed] red." But Officer Guitar clarified that "[t]here was tape on that far right" taillight. She explained the problem with tape on a taillight: "Well, if they're trying to cover up the red portion or if, say, the red portion -- the lens is broken, sometimes they'll use red cellophane to cover it to mimic the lens, and if it blows off, it will still expose that white light."

We note that Appellant's vehicle was equipped with at least four taillights. Appellant's counsel elicited testimony from Officer Guitar that, besides that taillight that she observed, at least two of Appellant's taillights were functional.

After the trial court heard the evidence, it partially denied Appellant's motion to suppress. The trial court concluded that Officer Guitar had reasonable suspicion that Appellant committed a traffic violation.

At trial, Officer Guitar testified as the State's sole witness. Officer Guitar again testified that she pulled Appellant over for a traffic violation and arrested him for DWI.

Another Abilene Police Officer, who had arrived on the scene, searched Appellant's person and found a "scale" in his pocket. Officer Guitar testified that a scale is sometimes associated with narcotic activities. In Appellant's wallet, Officer Guitar found $300. Officer Guitar and the other officer also searched the vehicle that Appellant was driving; Appellant did not own the vehicle. When they searched it, they found a white crystal-like substance in a plastic bag underneath the driver's seat. The substance was methamphetamine in the amount of 1.45 grams. Officer Guitar also found empty plastic bags in the vehicle; the bags matched the plastic bag that contained the methamphetamine found in the vehicle.

Appellant raises two issues on appeal. In his first issue, Appellant argues that the trial court abused its discretion when it denied his motion to suppress because Officer Guitar did not have reasonable suspicion to stop Appellant for a traffic violation. In his second issue, Appellant contends that the evidence was insufficient for a jury to have concluded beyond a reasonable doubt that Appellant was legally detained for a traffic violation. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23 (West 2018). Appellant categorizes his second issue as a sufficiency-of-the-evidence issue. However, the sufficiency of the evidence to support a jury's resolution of an instruction under Article 38.23(a) is not reviewable on appeal. *Holmes v. State*, 248 S.W.3d 194, 200 (Tex. Crim. App. 2008) (jury's decision regarding an Article 38.23 factual dispute is unreviewable); *Hanks v. State*, 137 S.W.3d 668, 671–72 (Tex. Crim. App. 2004) (factual sufficiency review is not appropriate with respect to jury's resolution of admissibility of evidence under Article 38.23 instruction). To the extent that Appellant's complaint is one of sufficiency of the evidence for his

4

conviction of possession of methamphetamine, we first address that complaint and then review his complaint about the legality of the traffic stop.

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). When we conduct a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778. Intent may also be inferred from circumstantial evidence, such as acts, words, and the conduct of an appellant. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).

We believe that the independent facts and circumstances in this case justify the jury's conclusion that Appellant had possession of the methamphetamine and that he knew the substance was methamphetamine. Although Appellant did not own the vehicle, Appellant was in sole possession of the vehicle where the

methamphetamine was found, and Appellant had received prior traffic citations while driving the vehicle. The jury could have therefore inferred that Appellant commonly drove it. Appellant also possessed a scale of the type commonly associated with narcotics, and he had $300 on his person. Further, during the search of the vehicle, the officers found empty plastic bags that matched the plastic bag in which the methamphetamine was found. To the extent that Appellant raises a sufficiency-of-the-evidence complaint, we overrule it.

Next, we address the legality of the traffic stop. As we explained above, Appellant claims that the trial court erred when it denied his motion to suppress. He also claims that the jury could not have concluded beyond a reasonable doubt that the traffic stop was legal (this challenge is rooted in the jury's implied finding, per the Article 38.23 instruction given in this case, that the traffic stop was legal). Although both complaints concern the same issue—whether Officer Guitar had reasonable suspicion to detain Appellant for a traffic violation—we will not review the jury's implied findings under Article 38.23(a); instead, we will solely determine whether the trial court erred when it denied Appellant's motion to suppress. *See Appleby v. State*, No. 11-17-00038-CR, 2018 WL 849692, at *2 (Tex. App.—Eastland Feb. 8, 2018, no pet.) (mem. op., not designated for publication) (an Article 38.23 issue is not reviewable for factual sufficiency) (citing *Hanks v. State*, 137 S.W.3d 668, 672 (Tex. Crim. App. 2004)).

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). When we review a ruling on a motion to suppress, we apply a bifurcated standard of review. *Brodnex v. State*, 485 S.W.3d 432, 436 (Tex. Crim. App. 2016). We afford almost total deference to the trial court's determination of historical facts and of mixed questions of law and fact that turn on the weight or credibility of the evidence. *Id.*; *Martinez*, 348 S.W.3d at 922–23. We review de novo the trial court's determination

6

of pure questions of law and mixed questions of law and fact that do not depend on credibility determinations. *Brodnex*, 485 S.W.3d at 436. When the trial court makes express findings of fact, we first determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). "We uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case." *State v. Iduarte*, 268 S.W.3d 544, 548 (Tex. Crim. App. 2008).

A traffic stop is a seizure and must be reasonable under both the United States and Texas Constitutions. *See Davis v. State*, 947 S.W.2d 240, 245 (Tex. Crim. App. 1997). "There need only be an objective basis for the stop; the subjective intent of the officer conducting the stop is irrelevant." *State v. Clark*, 315 S.W.3d 561, 564 (Tex. App.—Eastland 2010, no pet.); *see Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). A violation of a traffic law sufficiently justifies initial detainment during a traffic stop. *McVickers v. State*, 874 S.W.2d 662, 664 (Tex. Crim. App. 1993).

Appellant raises several arguments to support his position that Officer Guitar had no reasonable suspicion to detain him for a traffic violation. First, Appellant contends that Officer Guitar had no reasonable suspicion to detain him for a traffic violation because his vehicle was equipped in compliance with Section 547.322(d) of the Transportation Code—the provision that Officer Guitar relied on to stop Appellant. Section 547.322(d) contains this provision: "A taillamp shall emit a red light plainly visible at a distance of 1,000 feet from the rear of the vehicle." TEX. TRANSP. CODE ANN. § 547.322(d) (West 2011). According to Appellant, Section 547.322(a), which provides, in relevant part, that "a motor vehicle . . . shall be equipped with at least two taillamps," *id.* § 547.322(a), only requires, in the case of a vehicle with at least four taillights—like Appellant's—that "at least" two of the

7

four taillights project red light visible from 1,000 feet. Appellant therefore claims that, even if one of his taillights was defective, he had "at least" two taillights that had red lights that were visible from 1,000 feet.

The issue is whether the requirement that "[a] taillamp shall emit a red light plainly visible at a distance of 1,000 feet from the rear of the vehicle" applies to all taillights on a vehicle or only to the two minimum taillights required by law under Section 547.322(a). This is a matter of statutory construction.

"The starting point in any statutory construction analysis is the plain language of the statute in question." *Ex parte Whiteside*, 12 S.W.3d 819, 821 (Tex. Crim. App. 2000). "When a statute is clear and unambiguous, we should apply the plain meaning of its words, unless that plain meaning leads to absurd results." *Id.*

We believe the statute is unambiguous. *Montes v. State*, No. 08-13-00060-CR, 2015 WL 737988, at *2 (Tex. App.—El Paso Feb. 20, 2015, no pet.) (not designated for publication). Section 547.322(a) provides that all motor vehicles, except those made before 1960, shall be equipped with at least two "taillamps." TRANSP. § 547.322(a). "A taillamp shall emit a red light plainly visible at a distance of 1,000 feet . . . ." *Id.* § 547.322(d). The shift from the plural "taillamps" in subsection (a) to the singular "[a] taillamp" in subsection (d) indicates that the legislature contemplated the existence of multiple "taillamps" on a vehicle and prescribed that each individual taillamp would be subject to the Transportation Code requirement. Because the statute is subject to only one interpretation, our legal analysis concludes there.

Next, Appellant argues that Officer Guitar did not have reasonable suspicion to detain him for a violation of Section 547.322(d) because Officer Guitar testified, based on her perception of certain portions of the dashcam video, that the allegedly defective taillight was only a "brighter" red than the other taillights on Appellant's

vehicle. Appellant claims that having a taillight that is a "brighter" red than the other taillights is not a violation of Section 547.322(d).

A traffic violation occurs under Section 547.322(d) if a cracked taillight emits white light that renders the red light of that same taillight not visible from 1,000 feet away. *See Crain v. State*, No. 08-02-00103-CR, 2003 WL 1386942, at *3 (Tex. App.—El Paso Mar. 20, 2003, no pet.) (mem. op., not designated for publication). No traffic violation occurs, however, if a fracture in a taillight allows white light to emit, so long as the taillight continues to emit the requisite red light for 1,000 feet. *See Vicknair v. State*, 751 S.W.2d 180, 189–90 (Tex. Crim. App. 1986) (op. on reh'g).

When Officer Guitar was shown select portions of the dashcam video, she testified that the allegedly defective taillight emitted a brighter red light than the other taillights. However, Officer Guitar also testified that the dashcam video differed from what she observed "in person." Officer Guitar stated that she saw "in person" that the white light of one of Appellant's vehicle's taillights overpowered the red light of that same taillight and that she could not see any of the red light from that taillight. She testified that the Texas Transportation Code requires a vehicle to have a visible red taillight at 1,000 feet.

We agree with Appellant that a taillight that merely emits a brighter red light is not a violation of the statute. However, Officer Guitar's in-person observations, as she perceived them, are sufficient to establish a violation of Section 547.322(d). Whether Officer Guitar was mistaken in her observations is the subject of Appellant's next argument.

In his next and final argument, Appellant claims that Officer Guitar did not have reasonable suspicion to detain him for a traffic violation because her observations, on the day of the offense, were factually incorrect. Specifically, Appellant argues that, to the extent that Officer Guitar testified that the taillight on

9

the vehicle that he was driving was cracked and was emitting a white light that overpowered the red light of that taillight, those observations were incorrect because (1) the dashcam video clearly shows that Appellant's taillights were red and intact and (2) Officer Guitar clarified on cross-examination that the lens of the allegedly defective taillight was not broken and only emitted a brighter red light. Appellant therefore claims that the trial court erred when it relied on Officer Guitar's in-person observations to conclude that Appellant had a defective taillight. In order to address Appellant's contention, we must describe the appearance of the taillights as they are shown in the dashcam video.

The dashcam video begins as Officer Guitar sat in her vehicle at the red light. About forty seconds into the video, Appellant can be seen driving through the intersection; the vehicle that Appellant was driving is only visible for a few seconds as he proceeded through the intersection. The video reflects that, as Appellant drove through the intersection, the taillights on the back of the vehicle were only partially visible. The taillights that are visible on the video appear to be red. The video then depicts that Officer Guitar waited for the light to change to green before she turned to follow Appellant. As she waited for the light to change before turning, Appellant drove through the intersection and out of the range of the dashcam for at least nine seconds. Importantly, Officer Guitar testified that it was at this point that she saw the defective taillight.

After the light changed to green, as depicted on the video, Officer Guitar turned and followed Appellant. When she turned, Appellant's vehicle again became visible on the dashcam video—as he was about to turn into the hotel parking lot. We note that, at this point in the video, it is difficult to determine the color and condition of the taillights on Appellant's vehicle. All the taillights on his vehicle appear white (but we note that the record reflects that Officer Guitar's headlights apparently distorted the appearance of the taillights at certain instances on the dashcam video).

10

As Officer Guitar drove closer, she activated the emergency lights on her vehicle. Appellant turned into the hotel parking lot, and Officer Guitar followed him. As she turned into the parking lot, the dashcam video shows a clear view of all the taillights on Appellant's vehicle. Yet, Officer Guitar's vehicle lights again seem to distort the color of the taillights. However, all of the taillights on Appellant's vehicle appear to emit some red light. Next, Officer Guitar parked directly behind Appellant. She approached the vehicle and spoke with Appellant; this encounter led to his arrest. At a point later in the video, a clear view of Appellant's four taillights reflects that all of Appellant's vehicle taillights appear intact and emit some red light.

It is difficult for this court to determine whether the taillight at issue failed to emit a red light at 1,000 feet, given that the point in time at which Officer Guitar perceived the traffic infraction is not shown on the dashcam video. However, we can say that the taillight at issue, as reflected on the dashcam video, did not appear to be cracked. We are mindful, though, that "there is a difference between what an officer sees during an ongoing event and what we see when reviewing a video." *Jaganathan v. State*, 479 S.W.3d 244, 248 (Tex. Crim. App. 2015). In any event, the issue is not whether Appellant committed a traffic violation; rather, the issue is whether Officer Guitar had reasonable suspicion that Appellant had committed one. *See id.* at 247.

An officer's reasonable suspicion may be validly based on articulable facts that are ultimately shown to be inaccurate or false. *See Williams v. State*, 621 S.W.2d 613, 615 (Tex. Crim. App. [Panel Op.] 1981); *Kelly v. State*, 721 S.W.2d 586, 587 (Tex. App.—Houston [1st Dist.] 1986, no pet.); *see also Illinois v. Wardlow*, 528 U.S. 119, 126 (2000) (explaining that the reasonable suspicion standard "accepts the risk that officers may stop innocent people"). A mistake about the facts, if reasonable, will not vitiate an officer's actions in hindsight so long as his actions were lawful under the facts as he reasonably, albeit mistakenly, perceived them to

be. *Robinson v. State*, 377 S.W.3d 712, 720–21 (Tex. Crim. App. 2012); *Parson v. State*, 392 S.W.3d 809, 817 (Tex. App.—Eastland 2012, pet. ref'd). Even if Officer Guitar was mistaken, we conclude that Officer Guitar's mistake was reasonable. *See State v. Torrez*, 490 S.W.3d 279, 283–85 (Tex. App.—Fort Worth 2016, pet. ref'd); *Trevino v. State*, No. 03-14-00009-CR, No. 03-14-00010-CR, 2016 WL 463658, at *5–8 (Tex. App.—Austin Feb 5, 2016, pet. ref'd) (mem. op., not designated for publication). The traffic stop, as Officer Guitar perceived it, was lawful. Therefore, the trial court did not err when it denied Appellant's motion to suppress. We overrule Appellant's first and second issues.

We affirm the judgment of the trial court.


JIM R. WRIGHT
SENIOR CHIEF JUSTICE


May 9, 2019

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.